INSURANCE COMPANY OF NORTH AMERICA *v.*
FORREST CITY COUNTRY CLUB

CA 90-533                                            819 S.W.2d 296

Court of Appeals of Arkansas
Division I
Opinion delivered November 20, 1991

*Tatum Law Firm,* by: *Tom Tatum,* for appellant.

*Easley, Hicky & Clive,* by: *R. Alan Cline,* for appellee.

JAMES R. COOPER, Judge. The appellant in this contract case issued to the appellee a commercial general liability policy providing certain types of liability coverage for the appellee, a private country club which operates tennis courts and a golf course in Forrest City for their members and guests. On April 26, 1988, during the time period the insurance coverage was in effect, Theresa Whitfield was advised that she could not play at the country club tennis court because of country club rules. Ms. Whitfield, who is black, filed through her parents a civil rights action in Federal District Court alleging that the policy of the appellee country club on the use of the tennis facility violated her rights under 42 U.S.C. §§ 1981 and 1983, and also violated the Interstate Commerce Clause in that Ms. Whitfield was denied equal access to a place of public accommodation because of her race. In addition to the civil rights violations alleged, Ms. Whitfield asserted that the combined action of the defendants constituted the tort of outrage. The appellee brought an action against the appellant seeking a declaratory judgment that the appellant had a duty to defend it against Ms. Whitfield's lawsuit. The trial court found that the factual allegations in Ms. Whitfield's complaint fell within the policy coverage and that the appellant had the duty to defend. From that decision, comes this appeal.

Although the issue of the appellant's duty to pay is now moot because the federal suit resulted in a verdict in appellee's favor, the appellant contends on appeal that the trial court erred in finding that the appellant had a duty to defend the suit of *Whitfield* v. *Forrest City Country Club.* We find no error, and we affirm.

■ As a general rule, the pleadings against the insured determine the insurer's duty to defend. *Baxley* v. *Colonial Insurance Company,* 31 Ark. App. 235, 792 S.W.2d 355 (1990). Although it has been held that there can be situations where the duty to defend cannot be determined solely from the pleadings, the Arkansas Supreme Court has stated that the duty to defend is broader than the duty to pay damages, and it is enough if the possibility of damages exists; if injury or damage within the policy

coverage could result, the duty to defend arises. *Home Indemnity Company* v. *City of Marianna*, 291 Ark. 610, 727 S.W.2d 375 (1987). The pleadings in Ms. Whitfield's suit alleged:

10. That Plaintiff Theresa Whitfield, hereinafter referred to as "Plaintiff", is a student in attendance in the Defendant Earle School District and a member of the Earle High School tennis team, one of the schools of that district.

11. That on April 26, 1988 the Plaintiff was in Forrest City, Arkansas, as a member of the Earle High School Girls' Tennis Team pursuant to a scheduled match between Earle High School and the Forrest City High School Girls' tennis teams. After the Earle High School Tennis Team had arrived in Forrest City, the coaches for both teams, Defendant Charles Bowlin for Forrest City and Defendant Jack Hosford for Earle drew up the bracketing for the tennis matches. The Defendants determined that some of the players would go play at the tennis facilities owned by the Defendant Forrest City Country Club and other players would go play their matches at the tennis courts of the Forrest City Civic Center. The Earle High Girls Tennis Team was transported to the Defendant Forrest City Country Club tennis facilities to begin their matches. The Plaintiff was with the team at the time. After the team had unloaded from the van in which they had been transported, the Defendant Bowlin saw that the Plaintiff was with the team. At that time the Defendant Bowlin approached the Defendant Hosford and stated that he did not think that the "little black girl" could play at the Country Club. The Defendant Bowlin then approached Plaintiff and told her that she could not play her match at the Defendant Forrest City Country Club tennis courts because "they do not allow it". (Do not allow Blacks to play at the Country Club). The Defendant Hosford told the Plaintiff that he was sorry but this was a Country Club rule. The Plaintiff was then transported back to the Forrest City Civic Center to play her match. The Plaintiff was visibly upset and crying as a result of the humiliation she experienced.

12. That the Plaintiff was not allowed to play at the Defendant Forrest City Country Club tennis court and was transferred to the Forrest City Civic Center tennis court to play her match because of her race.

In addition, Ms. Whitfield alleged that Forrest City Country Club entered into an agreement for the use of the Country Club facilities with the understanding that the Forrest City School District would not allow black participants to play on the tennis court, and that the actions of Coach Bowlin and the other defendants were in the furtherance of a conspiracy to violate Ms. Whitfield's civil rights. Finally, Ms. Whitfield alleged that the acts of the defendants constituted the common law tort of outrageous conduct and the common law tort of infliction of emotional distress.

The insurance policy issued by the appellant to the appellee country club provided that the appellant insurance company would have the right and duty to defend any suit seeking damages for "personal injury." "Personal injury" was defined as injury, other than bodily injury, arising out of enumerated offenses, including "wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies . . . ."

The crux of the appellant's argument is that the facts alleged in the civil rights action brought by the Whitfields did not constitute an "eviction" from the country club property under the terms of the insurance policy. The appellant urges us to strictly construe "eviction" as a term limited to interference with a tenant's enjoyment of the property; because Ms. Whitfield was a mere licensee and not a tenant, the appellant argues, no eviction occurred and no duty to defend arose under the terms of the policy. We do not agree because we conclude that the term "eviction" was ambiguous as used in the insurance policy at issue in the case at bar.

In order to be ambiguous, a term in an insurance policy must be susceptible to more than one reasonable construction. *Watts* v. *Life Insurance Company of Arkansas*, 30 Ark. App. 39, 782 S.W.2d 47 (1990). Moreover, the language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Columbia Mutual Casualty Insurance Company* v. *Coger*, 35 Ark. App. 85, 811 S.W.2d 345 (1991). The appellant

correctly states that the term "eviction" has been defined as meaning "interference with a tenant's enjoyment of the premises." *See Burdan* v. *Walton*, 286 Ark. 98, 689 S.W.2d 543 (1985). However, the word "evict," used in its popular sense, also means merely to force out or eject. *American Heritage Dictionary* (2d College ed. 1982). An insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in favor of the insured and strictly against the insurer. *Baskette* v. *Union Life Insurance Company*, 9 Ark. App. 34, 652 S.W.2d 635 (1983). Construing the term "eviction" in that fashion, we hold that the allegations in Ms. Whitfield's complaint sufficiently stated a cause of action within the policy coverage to give rise to the duty to defend.

Affirmed.

JENNINGS and ROGERS, JJ., agree.