**UNION INSURANCE COMPANY,**
**Plaintiff**

v.

**THE KNIFE COMPANY,**
**INC., Defendant.**

Civ. No. 95–5039.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Sept. 6, 1995.

1214

Brian P. Boyce, Frye, Mickel & Boyce, Little Rock, AR, for plaintiff.

Matthew Horan, Fort Smith, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This declaratory judgment action was filed by Union Insurance Company to determine whether it has a duty to defend its insured, The Knife Company, from a suit filed in the Eastern District of Tennessee, styled *Tennessee River Valley Knife Association, Inc. v. A.G. Russell, Inc.*, Case No. 1:94–CV–230. In that suit, the plaintiff, Tennessee River Valley Knife Association, alleges that the insured infringed its trademark.

## I. DUTY TO DEFEND

As a general matter, the duty to defend is determined by comparing the allegations in the underlying complaint to the scope of the coverage provided by the insurance policy. *Insurance Co. of North Am. v. Forrest City Country Club*, 36 Ark.App. 124, 125, 819 S.W.2d 296 (1991). If injury or damage within the policy coverage *could* result from the underlying suit, the duty to defend arises. *Home Indemnity Co. v. City of Marianna*, 291 Ark. 610, 727 S.W.2d 375 (1987).

In interpreting the policy, traditional rules of insurance policy construction apply. *Ritter v. United States Fid. & Guar. Co.*, 573 F.2d 539 (8th Cir.1978). A policy is to be interpreted and construed like any other contract according to general contract principles to determine the "mutual intent of the parties." *Enterprise Tools, Inc. v. Export–Import Bank of U.S.*, 799 F.2d 437 (8th Cir.1986), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1569, 94 L.Ed.2d 761 (1987). However, due to the reality that insurance contracts are contracts of adhesion, the courts have developed some special rules of construction,

the most important of which is the rule that when a policy provision is ambiguous, the court must resolve that ambiguity in favor of the insured. *Deal v. Farm Bureau Mut. Ins. Co. of Ark.*, 889 S.W.2d 774, 48 Ark.App. 48 (1994).

 The determination of ambiguity rests with the court. *Deal, supra.* However, this does not provide the court with license to rewrite the policy, or to import an ambiguity that does not exist, or to force an unnatural or perverted meaning from plain words under the guise of construction. *Looney v. Allstate Ins. Co,* 392 F.2d 401 (8th Cir.1968). Ambiguity exists only if the insurance policy provision is susceptible to more than one *reasonable* interpretation. *Keller v. Safeco Ins. Co. of Am.,* 877 S.W.2d 90, 317 Ark. 308 (1994).

 In interpreting a policy, the terms used must be interpreted in their "plain, ordinary and popular sense," rather than their legal or technical meaning. *Southern Farm Bureau Cas. Ins. Co. v. Williams,* 260 Ark. 659, 662, 543 S.W.2d 467 (1976). "Courts often ascertain the ordinary and popular sense of undefined words in an insurance policy by consulting a dictionary." David B. Goodwin, *Review Essay: Disputing Insurance Coverage Disputes,* 43 Stan. L.Rev. 779, 784 (1991).

The court now turns to a discussion of the underlying complaint and the applicable policy provisions.

## II. THE UNDERLYING COMPLAINT

The following factual allegations are taken from the complaint in the case filed in the Eastern District of Tennessee. Since March 1991, Tennessee River Valley Knife Association has used the mark "MARBLES" for hunting, fishing and sporting knives which has been prominently displayed on the products themselves, their containers and their advertising. This mark was registered with the United States Patent and Trademark Office on January 4, 1994 covering use of the mark on knives and Class 8 hand tools.

The Knife Company has allegedly infringed on the "MARBLES" mark by selling products under that name without permission, which is allegedly likely to cause confusion as to the source of the products. Since March 23, 1994, the Tennessee River Valley Knife Association has requested that The Knife Company cease and desist from the alleged trademark infringement, but The Knife Company has refused to do so.

Tennessee River Valley Knife Association has brought various federal law claims under the Lanham Act for false designation of origin and trademark infringement. It has also brought actions for common law trademark infringement and unfair competition. The essence of the complaint is that The Knife Company has "passed off" its goods as those of Tennessee River Valley Knife Association.[1]

The underlying complaint also alleges that the Knife Company intentionally infringed on the "MARBLES" trademark with the intent to cause confusion, mistake, and to deceive.

## III. POLICY COVERAGE

The insurance policy in question provides a duty to defend actions based on "advertising injury," which the policy defines to include actions for "misappropriation of advertising ideas or style of doing business" and actions for "infringement of copyright, title or slogan." The question is whether the actions for "passing off" and trademark infringement are covered by this language.

The policy excludes coverage of actions for "advertising injury arising out of . . . written publication of material if done by the direction of the insured with knowledge of its falsity."

## IV. DISCUSSION

 The court concludes that "passing off" and trademark infringement constitute "misappropriation of advertising ideas or style of

---

1. The court uses the terms "passing off" and "trademark infringement" somewhat interchangeably. Any misrepresentation as to source of sponsorship of goods, or any false designation of origin, can be referred to as an action for "passing off." If such an action arises solely from the unauthorized use of a trademark, then it is an action for "trademark infringement." *See Restatement, Third, Unfair Competition,* § 4, Comment b (1993).

doing business." Union Insurance does not dispute that a trademark is an "advertising idea" or "style of doing business" and the courts that have addressed the same issue under the same form policy have concluded that it is. *J.A. Brundage Plumbing v. Massachusetts Bay Ins.*, 818 F.Supp. 553, 557 (W.D.N.Y.1993), *vacated by request of attorneys*, 153 F.R.D. 36, 38 (W.D.N.Y.1994);[2] *Noyes v. American Motorists Ins.*, 855 F.Supp. 492 (D.N.H.1994); *Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co.*, 878 F.Supp. 1034 (E.D.Mich.1995); *Ross v. Briggs & Morgan*, 520 N.W.2d 432 (Ct.App. Minn.1994); *Poof Toy Prod., Inc. v. United States Fid & Guar. Co.*, 891 F.Supp. 1228 (E.D.Mich.1995).

Moreover, these courts have concluded that an action for infringement of a trademark is properly called an action for "misappropriation," both of advertising ideas and one's style of doing business.

> in the ordinary sense of these terms, misappropriation of an "advertising idea" would mean the wrongful taking of the manner by which another advertises its goods or services. This would include the misuse of another's trademark or trade name. * * * Similarly, one's mark and name is an integral part of an entity's "style of doing business." Such misappropriation of "style of doing business" would include trademark, trade name or service mark infringement.

*J.A. Brundage*, 818 F.Supp. at 557.

Union Insurance contends that "infringement" of a trademark cannot be a "misappropriation," because the term "misappropriation" refers to the common law tort of misappropriation, which does not include trademark infringement. In support of its argument, Union Insurance relies exclusively on *American Economy Ins. Co. v. Reboans, Inc.*, 852 F.Supp. 875 (N.D.Cal.1994). However, Union Insurance has failed to realize that the *Reboans* court reversed itself, and joined the majority trend described above in *American Economy Ins. Co. v. Reboans, Inc.*, —— F.Supp. ——, 1994 U.S.Dist. LEXIS 20383; 34 U.S.P.Q.2d (BNA) 1692 (N.D.Cal. December 27, 1994).

In any case, the court rejects Union Insurance's argument that the term "misappropriation" applies only to the common law tort of misappropriation. Union Insurance's approach would violate the rule that the language in insurance policies should be construed in its plain, ordinary and popular meaning. *Tri–State Ins. Co. v. Sing*, 41 Ark. App. 142, 145, 850 S.W.2d 6 (1993). An instructive case is *Insurance Co. of North Am. v. Forrest City Country Club*, 36 Ark. App. 124, 125, 819 S.W.2d 296 (1991), where the court held that an insurance company had a duty to defend its insured, a country club, from a civil rights suit for asking a black high school tennis player to leave. The insurance policy provided a duty to defend any suit for "eviction of a person from a room, dwelling or premises that the person occupies." The court noted that the term "evict" is defined by the law to mean "interference with a tenant's enjoyment of the premises," but concluded that the term "evict," in its more popular sense, also means to force out or eject. *See also Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir.1995) ("we do not agree with the conclusion that the phrase 'unfair competition' unambiguously refers only to the common law tort of that name").

If the drafters of this insurance policy wanted to limit their exposure to "suits arising under the common law tort of misappropriation" or to exclude exposure for "actions involving trademarks," it would have been a simple matter to do so. In fact, previous policies apparently did expressly exclude actions for trademarks.

> Until 1986, the standard ISO CGL form included "unfair competition" as a covered class of advertising injuries, and explicitly excluded injuries resulting from trademark, service mark, and trade name infringement. In 1986, ISO revised the

**2.** Since the court relies heavily on the reasoning used by the court in *J.A. Brundage, supra,* the court should explain that the opinion was vacated at the request of the parties pursuant to a settlement. The court agreed to do so with "great reservations" as a "courtesy to the attorneys involved." *J.A. Brundage Plumbing v. Massachusetts Bay Ins.,* 153 F.R.D. 36, 38 (W.D.N.Y. 1994).

standard form: unfair competition was eliminated in favor of misappropriation of advertising ideas and style of doing business, and the trademark, service mark and tradename exclusion was eliminated.

*Reboans,* 852 F.Supp. at 882.

This court also concludes that an action for trademark infringement can be described as an action for "infringement of a copyright, title or slogan" as those terms are used in the policy. *J.A. Brundage, supra; Noyes, supra; Advance Watch Co., supra; Ross, supra; Poof Toy Prod., supra.* A trademark is defined by statute as "any word, name, symbol or device or any combination thereof, adopted by a manufacturer to identify his goods and distinguish them from those manufactured and sold by others." 15 U.S.C. § 1127. Similarly, a title is defined by Black's Law Dictionary as: "A mark, style or designation; a distinctive appellation; the name by which anything is known." *J.A. Brundage* at 558–59. Also, both titles and slogans, even using more technical definitions of those terms, can undoubtedly be protected as trademarks. *Restatement of Law, Third, Unfair Competition* § 14 Comment a, Reporter's Note to Comment a (1993).

Finally, Union Insurance contends that it has no duty to defend the trademark infringement suits, because the complaint alleges that The Knife Company *intentionally* infringed on the "MARBLES" trademark with the intent to cause confusion, mistake, and to deceive. Union Insurance contends that it has no duty to defend under such circumstances. The court disagrees.

First of all, the precise language of the policy exclusion does not refer to actions for intentional infringement, but rather to actions for "advertising injury arising out of ... written publication of material if done by the direction of the insured with knowledge of its falsity." It is not clear that an action for intentional trademark infringement falls under this exclusion, but it is not necessary to reach that issue.

Even assuming Union Insurance has no duty to pay judgments for intentional infringements, the duty to defend is broader than the duty to pay judgments. If injury or damage within the policy coverage *could* result from the suit, the duty to defend arises. *Home Indemnity Co. v. City of Marianna,* 291 Ark. 610, 727 S.W.2d 375 (1987). Since intent is not a required element of trademark infringement, there could be a finding of liability against The Knife Company even if the infringement were innocent. Therefore, there is a duty to defend despite the allegation of willfulness. *See Poof Toy Prods., supra,* at 1236–37.

## V. CONCLUSION

For the above reasons, the court will deny Union Insurance's motion for summary judgment.