Thelma VINCENT *v.* PRUDENTIAL INSURANCE
BROKERAGE

97-1318                                      970 S.W.2d 215

Supreme Court of Arkansas
Opinion delivered June 4, 1998

*Gary Eubanks & Associates,* by: *Robert S. Tschiemer* and *Willain Gary Holt,* for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC* , by: *Mark N. Halbert,* for appellee.

TOM GLAZE, Justice. This case brings into issue an exclusionary clause in a hospitalization indemnity policy that appellant Thelma Vincent obtained from appellee Prudential Insurance Brokerage in 1969. On May 13, 1996, Vincent entered the hospital where she stayed until June 19, 1996. Because Vincent was Medicare eligible and the health providers were paid under the Medicare program, Prudential denied that it owed Vincent any benefits under her policy.[1] Vincent filed suit against Prudential, alleging breach of contract, but the circuit court dismissed her suit with prejudice upon granting Prudential's motion for summary judgment. Vincent appeals, raising three points for reversal.

Vincent's arguments all focus on the exclusionary clause contained in Prudential's policy, which reads as follows:

> This policy does not provide benefits with respect to:

> 5. *Hospital confinements,* convalescent nursing home confinements, *services, or supplies* to the extent to which they are *provided for under any national or state government program or law* that is not restricted to the employees of such government or to such employees and their dependents. (Emphasis added.)

First, Vincent cites *Hartford Fire Ins. Co. v. Carolina Cas. Ins.,* 52 Ark. App. 35, 914 S.W.2d 324 (1996), in support of her claim that the foregoing language is ambiguous and should be construed against the insurer and in her favor as the insured. She argues that the words "provided for" do not include a situation where the government "paid for" medical services. Instead, Vincent urges "provided for" could include a situation where the government

---

[1] The policy provided payment of $30.00 per day plus $300.00 in miscellaneous expenses during a hospitalization.

provides services for veterans at veterans' facilities. These added terms and suggested meaning that Vincent attempts to engraft onto the above clause fail to consider the clear language contained in the exclusionary provision which restricts payment of benefits for medical services or supplies to the extent *those same benefits* are provided by the government. This provision unquestionably provides for the reduction or exclusion of benefits under the policy in the event those benefits are provided by a government program like Medicare.

When reviewing insurance policies, this court adheres to the long-standing rule that, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). We have also found it unnecessary to resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. *Id.* In other words, the terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid. *Id.* Because no ambiguity exists in the exclusion provision here, and it is clear that the policy is intended to reduce or exclude benefits when Medicare benefits have been provided and paid, we must reject Vincent's argument.

Now, we turn to Vincent's second point where she asserts the policy exclusionary clause is invalid because it conflicts with Ark. Code Ann. § 23-85-132 (Repl. 1992). This argument, too, must fail. Section 23-85-132 provides in relevant part, as follows:

Reduction of benefits to other insurance contracts prohibited.

(a) *No contract* of individual disability insurance sold, delivered, or issued for delivery or offered for sale in this state, directly or indirectly *providing indemnity, services*, or cash *to an individual as a result of hospitalization, . . . shall contain a provision, reducing the benefit which would otherwise be payable to the individual in the absence of other insurance, if the reduction of benefits is due solely to the existence of one (1) or more additional contracts providing benefits to that individ-*

*ual in the form of indemnity, service, cash, or any other things of value, whether the same insurer or another insurer.* (Emphasis added.)[2]

Vincent submits that § 23-85-132 is intended to protect Arkansas citizens from an insurer offsetting its obligations to pay benefits because an insured has "other insurance" for which the insured had contracted and paid premiums. In sum, Vincent argues that the policy exclusion here violates the intent of § 23-85-132, and that the trial court should have held Medicare was another insurance contract whose benefits under the statute would not reduce or exclude benefits to which Vincent was entitled under her Prudential policy.

■ The simple answer to Vincent's contention is that Medicare is not "other insurance." Instead, Medicare is a statutory right and constitutes federal financial assistance. *See United States v. Baylor University Medical Ctr.*, 736 F.2d 1039 (5th Cir. 1984); *Muller v. Hotsy Corp.*, 917 F.Supp. 1389 (N.D. Iowa 1996); and *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207 (6th Cir. 1997). If the General Assembly had intended to include Medicare or government programs as another insurance contract under § 23-85-132, it could have easily so provided, but it did not.

Finally, Vincent contends that an insurance company may not contract with its insured in a manner violative of public policy, and that our court should analyze § 23-85-132 in light of public policy concerns when scrutinizing the exclusionary clause in this case. In this vein, Vincent argues that, by the enactment of § 23-85-132, Arkansas's public policy was changed to disallow an offset of benefits under other insurance policies, as noted in her second argument hereinabove.

■ The public policy of this state is found in its constitution and statutes, *Wal-Mart Stores, Inc. v. Baysinger*, 306 Ark. 239,

---

[2] Section 23-85-132(b) further provides as follows:

(b) No contract of individual disability insurance sold, delivered, or issued for delivery or offered for sale in this state providing disability income coverage shall contain any provision for the denial or reduction of benefits because of the existence of other insurance, except as provided in § 23-85-122 or any coverages approved by the commissioner pursuant thereto and except that the benefits may be reduced to offset disability income benefits payable under the federal Social Security Act.

812 S.W.2d 463 (1991), but here Vincent fails to cite any such statutory or constitutional provision that would make Medicare exclusion clauses void as against public policy. Instead, she cites only § 23-85-132, which we have already pointed out is inapplicable to benefits provided by Medicare. Vincent refers to several cases where this court has held that certain insurance policy provisions, which reduced benefits to the insured, were violative of public policy; however, those cases involved different insurance coverage and statutes not in issue here. *See Shepherd v. State Auto Property & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993); *O'Bar v. M.F.A. Ins. Co.*, 275 Ark. 247, 628 S.W.2d 561 (1982); *Travelers Ins. Co. v. National Farmers Union Property & Cas. Co.*, 252 Ark. 624, 480 S.W.2d 585 (1972). Consequently, we find those cases are not controlling here, nor are they instructive when reviewing the validity of the indemnity hospitalization policy now in issue before us.

Because we find Vincent's arguments without merit, we affirm the trial court's ruling granting Prudential's summary-judgment motion and dismissing Vincent's complaint.