COLUMBIA MUTUAL INSURANCE COMPANY *v.* HOME MUTUAL FIRE INSURANCE COMPANY

CA 00-1154                                          47 S.W.3d 909

Court of Appeals of Arkansas
Division II
Opinion delivered June 13, 2001

*Daggett, Van Dover. Donovan & Perry, PLLC,* by: *Robert J. Donovan,* for appellant.

*Dover & Dixon, P.A.,* by: *Thomas S. Stone* and *Patrick E. Hollingsworth,* for appellee.

WENDELL L. GRIFFEN, Judge. Columbia Mutual Insurance Company (Columbia) appeals a decision by a Washington County chancellor that dismissed appellant's complaint with prejudice after concluding as a matter of law that 1) the statutory definition of policy cancellation did not apply to unilateral terminations or cancellations by a policyholder, 2) Columbia was not entitled to contribution, indemnity, or subrogation against appellee Home Mutual Fire Insurance Company (Home) because Home's policy was effectively terminated prior to a fire loss, and 3) Columbia lacked standing to complain. We affirm.

### Factual and Procedural History

This matter was submitted to the chancellor on stipulated facts that were jointly agreed to by the parties and adopted by the chancellor as his findings of fact.

Home issued an insurance policy to Vernon or Lynn Scantling that became effective on July 8, 1997, and covered the period from August 12, 1997, to August 12, 1998. The policy named Farmers Bank of Greenwood (Farmers) as the mortgagee of the premises, and included coverage of $60,000 for the residence as well as $18,000 for the Scantlings' personal property. On June 17, 1998, Vernon Scantling directed his insurance agent, Hughes Insurance Agency, to immediately cancel the Home policy. The agent did so, and Home prepared a notice of cancellation that was to take effect at 12:01 a.m. on June 17, 1998. Home mailed the notice to Farmers on June 18, 1998, and Farmers received it the next day. On the same date, Home mailed the Scantlings' agent a full refund of the

unearned premium. The agent issued the refund to the Scantlings on June 23, 1998.

Using Steve Standridge Insurance, Inc., the Scantlings completed an application on June 19, 1998, to insure the property with Columbia. Standridge issued a binder to the Scantlings that listed Farmers as the mortgagee on the Columbia policy. The binder covered the period from June 19, 1998, to June 18, 1999. It bound Columbia to cover $90,000 on the Scantlings' dwelling with a $500 deductible and to cover the Scantlings' personal property in the amount of $45,000. Farmers received notice of the issuance of the Columbia policy and did not object.

On June 28, 1998, the property, which was insured pursuant to the Columbia policy that listed Farmers as lienholder, was totally destroyed by fire. At the time of the fire, an outstanding mortgage in the amount of $85,426.09 was owed to Farmers. Columbia satisfied its obligation to Farmers as loss payee, but denied payment to the Scantlings, contending that the policy was *void ab initio* because of fraudulent and material misrepresentations in the Scantlings' application for insurance.[1] Although Home was notified of the loss, neither Farmers nor Columbia submitted a proof of loss or other written verification of the loss to Home, which denied any liability to the Scantlings, Farmers, or Columbia. Both the policy issued by Columbia and the policy issued by Home included pro-rata clauses that provided for payment of only a pro-rata share of the loss in the event there was other valid insurance in force at the time of the loss.

After satisfying its obligation to Farmers, Columbia instituted this action against Home, claiming it was entitled to contribution, indemnity and subrogation against Home for the pro-rata share of the loss because the cancellation was not timely under the terms of appellee's policy. Following an August 17, 2000, hearing, the chancellor dismissed appellant's complaint with prejudice after concluding as a matter of law that 1) the statutory definition of policy cancellation was only applicable to unilateral cancellations and

---

[1] Although a dispute arose between Farmers and Columbia regarding Columbia's entitlement to receive a full assignment and transfer of the mortgage and all securities held as collateral, the dispute was resolved by settlement. Also, a settlement was reached between the Scantlings, Columbia, Steve Standridge Insurance Agency, Steve Standridge individually, and Utica Mutual Insurance Company (the liability insurance carrier for Steve Standridge Insurance Agency).

therefore did not apply to termination or cancellation by the policyholder, 2) that Columbia was not entitled to contribution, indemnity, or subrogation, equitable or contractual against Home because Home's policy was effectively terminated prior to a fire loss, and 3) that Columbia lacked standing to complain regarding Home's failure to meet cancellation requirements because Farmers had not sought to enforce any interest it might have had as a third-party beneficiary of the insurance contract. Columbia now appeals.

## Standard of Review

■ Chancery decisions are reviewed *de novo*. While we do not set aside a chancellor's findings of fact unless we determine that the findings are clearly erroneous, a chancellor's conclusions of law are not afforded the same deference. *See Duhac v. City of Hot Springs*, 67 Ark. App. 98, 992 S.W.2d 174 (1999). This is so because a chancellor stands in no better position to apply the law than we do. *See id.* Thus, when we decide that a chancellor erroneously applied the law and that an appellant suffered prejudice as a result, we will reverse the erroneous ruling. *See id.*

## Finality

Before beginning our analysis, we initially address the issue of finality. Rule 54(b) of our Rules of Civil Procedure requires that when multiple claims or multiple parties are involved, the court may direct the entry of a final judgment as to one or fewer claims or parties provided that the court makes an express determination, based on specific findings of fact, that there is no sound reason for the delay. In the present case, appellant sued appellee for contribution, indemnity, and subrogation. The Scantlings moved to intervene, and the motion was granted. Next, the Scantlings filed a complaint in intervention, claiming an interest in any proceeds, and stating that they had pending litigation against appellant that would entitle them to certain proceeds.

The parties submitted the case to the chancellor based on stipulated facts. Among the stipulated facts were the parties' agreement that 1) although a dispute arose between Farmers and Columbia regarding Columbia's entitlement to receive a full assignment and transfer of the mortgage and all securities held as collateral, the dispute was resolved by settlement, and 2) a settlement was reached

between the Scantlings, Columbia, Steve Standridge Insurance Agency, Steve Standridge individually, and Utica Mutual Insurance Company (the liability insurance carrier for Steve Standridge Insurance Agency).

■ The chancellor's order dismissing the complaint with prejudice makes no mention of the Scantlings' complaint and the chancellor also failed to make an express determination as required by Rule 54(b). Although the better practice would have been for the judge to place an order in the record, the stipulation recites the settlement. Thus, no outstanding issue remains that would create piecemeal litigation.

### Effectiveness of Policy Cancellation

Appellant initially argues that the Home policy was in effect at the time of the fire loss because 1) the terms of Home's policy required a ten-day written notice to Farmers prior to the Scantlings' unilateral cancellation, and 2) Arkansas Code Annotated section 23-66-206(11)(B) (Supp. 1999) mandates that Home provide a twenty-day notice to Farmers prior to the cancellation becoming effective.

### Policy Language

■ In reviewing an insurance policy, we submit to the principle that when the terms of the policy are clear, the language in the policy controls. *See Vincent v. Prudential Ins. Brokerage*, 333 Ark. 414, 970 S.W.2d 215 (1998). There is no need to apply rules of construction when a clause is not ambiguous. *See id.*

■ Generally, a standard mortgage clause serves as a separate contract between the mortgagee and the insurer, as if the mortgagee had independently applied for insurance. *See Fireman's Fund Ins. Co. v. Rogers*, 18 Ark. App. 142, 712 S.W.2d 311 (1986). Thus, the rights of a named mortgagee in an insurance policy are not affected by any act of the insured, including improper and negligent acts. *See Hatley v. Payne*, 25 Ark. App. 8, 751 S.W.2d 20 (1988).

Rule 52(a) of the Arkansas Rules of Civil Procedure allows a party to request findings of fact and mandates that a court issue specific findings of fact and state separately its conclusions of law

when a party requests the court to do so. A party may also request that a court amend its findings of fact or make additional findings no later than ten days after the court enters its judgment.

▮ Here, Home's policy contained a mortgage clause,[2] which reads as follows:

> This insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property.

> . . .

> This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation and shall then cease.

Based on the above language, appellant advances the argument that because the mortgage clause precluded any act by the Scantlings from impairing the rights of Farmers, Home effectively canceled the Scantlings' policy as it pertained to Farmers' interest. Appellant asserts that once Home canceled the policy, it was required to continue to provide coverage to Farmers for ten days after it notified Farmers. While appellant acknowledges on appeal that the chancellor did not decide whether Home's policy was effectively canceled prior to the fire, a review of the chancellor's order indicates that the chancellor actually made no determination as to whether Home's policy required Home to give five or ten days' notice to Farmers and instead found that, based on the stipulation of facts, appellant lacked standing to complain because Farmers did not seek to enforce any interest it might have exercised as a third-party beneficiary. Thus, the chancellor made no ruling as to 1)

---

[2] The policy also stated in its standard provision section as follows:

**Cancellation of Policy.** This policy shall be canceled in whole or in part at any time at the request of the insured upon the return of this Policy to the Home Office of this Company, provided, that no unearned premium amounting to less than one quarterly monthly payment shall be refunded by this Company. This Policy may also be canceled by the Company by giving five days' notice of such cancellation.

**Mortgage Interest.** If loss or damage is made payable, in whole or in part, to a mortgagee not named herein as the insured, this Policy may be canceled as to such interest by giving to such mortgagee a ten days' written notice of cancellation.

when Home effectively canceled its policy, or 2) what notice, if any, Home was required to give Farmers. Because appellant failed to request that the chancellor amend his findings to address these issues, we decline to address them on appeal.

*Applicability of Arkansas Code Annotated section 23-66-206(11)(B)*

Chapter 66 of Title 23, titled the Trade Practices Act, governs the trade practices of individuals engaged in the business of insurance. *See* Ark. Code Ann. § 23-66-203 (Repl. 1994). The Act, which is designed to protect the public, prohibits unfair methods of competition and unfair trade acts or practices. *See* Ark. Code Ann. § 23-66-202(a) (Repl. 1994). However, the Act does not establish or extinguish a private right of action based on a violation of its provisions. *See* Ark. Code Ann. § 23-66-202(b) (Repl. 1994).

Under a subsection titled "Unfair methods of competition and unfair or deceptive acts or practices defined," Arkansas Code Annotated section 23-66-206(11)(B) (Supp. 1999) provides as follows:

> Cancellations of property and casualty policies shall only be effective when notice of cancellation is mailed or delivered by the insurer to the named insured and to any lien-holder or loss payee named in the policy at least twenty (20) days prior to the effective date of cancellation.

■ Notice of a cancellation provides an insured the opportunity to seek insurance elsewhere prior to the insured having no protection. *See Grubbs v. Credit General Ins. Co.*, 327 Ark. 479, 939 S.W.2d 290 (1997). Because notice serves to protect the public, many jurisdictions have held that when the insured requests that an insurer cancel the policy and shortly thereafter obtains replacement coverage, statutes regarding notice of cancellation are not applicable. *See* 2 *Couch on Insurance*, § 30:8 (3d ed. 2000). Whenever notice is an issue, the plain language of the governing statute or the insurance policy must be strictly adhered to.

In *American States Ins. Co. v. Southern Guar. Ins. Co.*, 53 Ark. App. 84, 919 S.W.2d 221 (1996), the insured canceled his insurance with the first insurance carrier in order to obtain coverage with a second insurer, and the agent issued a binder for automobile coverage with the second insurance carrier. Following an accident, the

second carrier paid the damages, but filed suit against the first carrier, alleging that the first carrier's insurance was still in effect. The trial court disagreed and granted summary judgment after finding that the first policy had been canceled and was not in effect at the time of the accident. We affirmed the trial court, finding that although an insured seeking to cancel a policy must request the cancellation in an unequivocal and absolute manner, there was no uncertainty that the insured had exercised his right to cancel the policy and had canceled it. *See American States, supra.*

■ A straightforward reading of the Trade Practices Act leaves little doubt that the Act is designed to regulate the activities of those engaged in the business of insurance. As such, the Act is not applicable to cancellations by a policyholder. Thus, the instant case is not analogous to cases concerning an insurer who unilaterally canceled the insurance policy of an insured.

Similar to the facts present in *American States, supra,* the Scantlings unilaterally and unequivocally canceled their policy with appellee, who in turn notified Farmers. Home then returned the unearned premium to the Scantlings. The Scantlings immediately obtained replacement insurance through Columbia, who accepted their application, took their premium, and issued a policy. These actions all occurred prior to the date of the fire.

■ Because the Scantlings requested that Home terminate their policy and simultaneously obtained greater replacement insurance coverage, we hold that the chancellor correctly concluded that the notice requirement of subsection 11(B) does not apply and that Home's policy was effectively terminated prior to the fire loss.

*Standing*

■ Columbia asserts that the statutory provisions of Arkansas Code Annotated section 23-66-206(11)(B) (Supp. 1999) provide a basis for it to assert a claim against Home for failure to follow the statutory notice provisions in regards to Farmers. However, as previously discussed, the Trade Practices Act expressly states that it provides no private right of action, and the Act applies to cancellations by an insurer, not unilateral cancellations by an insured. As such, the chancellor correctly determined that Columbia lacked standing.

*Entitlement to Equitable or Contractual*
*Contribution or Subrogation*

■ Next, appellant argues that because the residence was primarily covered by Home as well as appellant, Farmers could have sought to collect from either insurer. Appellee responds that because Farmers waived any complaint regarding Home's cancellation of the Scantlings' policy, Columbia has no rights as a subrogee. It also contends that Columbia had no subrogee rights as to Farmers because its payment to Farmers arose out of a discharge of its direct contractual obligation to Farmers. It argues that because Home's policy was not in force at the time of the fire loss, Columbia is not entitled to contribution. We hold that because the chancellor correctly concluded that Home's policy was not in effect at the time of the fire loss, and that Columbia lacked standing to challenge Home's failure to provide statutory notice to Farmers, appellant's arguments are moot.

■ Alternatively, the arguments are not persuasive. Subrogation allows an insurer to step in the shoes of an insured. *See Shelter Ins. Co. v. Arnold*, 57 Ark. App. 8, 940 S.W.2d 505 (1997) (quoting with approval *Williams v. Globe Indemnity Co.*, 507 F.2d 837 (8th Cir. 1974)). In order for equitable subrogation to apply, a debt or obligation must exist for which someone other than the subrogee is primarily liable and whom the subrogee discharges to protect the subrogee's rights. *See Moon Realty Co. v. Arkansas Real Estate Co.*, 262 Ark. 703, 560 S.W.2d 800 (1978).

■ The parties in the matter at hand stipulated that "Farmers Bank of Greenwood was entitled under the terms of the Columbia Mutual Insurance Company policy to receive payment made to it by Columbia Mutual Insurance Company." This being so, Colum-

bia could not have been subrogated to the rights of Farmers, because Columbia's payment to Farmers arose out of a primary obligation that Columbia owed Farmers.

*Contribution*

■■ ■■ Equitable contribution occurs when two or more valid insurance policies cover a particular risk of loss and a particular accident. *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 65 Cal. App. 4th 1279 (1998). As previously discussed, Home's policy was not in effect at the time of the fire. Nothing in the record indicates that Columbia knew of the existence of the Home policy prior to its decision to issue a policy to the Scantlings, that the issuance of the policy or the premium rates were contingent on the existence of other insurance, or that Home gained a profit at the expense of Columbia. There is no indication that Columbia expected another insurance carrier to share its risk of loss. Because equitable contribution serves to guarantee that each insurer pay its equitable share of a loss and that one insurer not profit at the expense of another, the right of equitable contribution does not exist in this case.

Affirmed.

VAUGHT and ROAF, JJ., agree.

SUPPLEMENTAL OPINION ON DENIAL OF
REHEARING

CA 00-1154                                        ___ S.W.3d ___

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered August 29, 2001

*Daggett, Van Dover, Donovan & Perry, PLLC*, by: *Robert J. Donovan*, for appellant.

*Dover & Dixon, P.A.*, by: *Thomas S. Stone* and *Patrick E. Hollingsworth*, for appellee.

WENDELL L. GRIFFEN, Judge. We delivered our opinion in this appeal from chancery court on June 13, 2001. Appellant has petitioned for rehearing, asserting that we erred in interpreting Rule 52(b) of the Arkansas Rules of Civil Procedure as requiring that an appellant move the trial court to amend or make additional findings for purposes of review. We deny the petition.

▮▮ Appellant is correct that it was not required to request that the chancellor amend his findings to address the issues of when

Home Mutual effectively canceled its policy or what notice, if any, Home Mutual was required to give to the mortgagee, Farmers Bank, for the purposes of review. Given our holding that the statute relied upon by appellant for recovery is not applicable to unilateral cancellation by an insured, we should have simply held that the trial court's decision was not clearly erroneous. Because an error in an opinion that does not affect the outcome of an appeal is not a ground for rehearing, we deny appellant's petition. *See Butler Manufacturing Co. v. Hughes*, 292 Ark. 198, 731 S.W.2d 214 (1987).

VAUGHT, ROAF, HART, BIRD, and NEAL, JJ., agree.