George GAWRIEH, *et al. v.* SCOTTSDALE INSURANCE CO.

CA 02-628                                            117 S.W.3d 634

Court of Appeals of Arkansas
Divisions I, II and III
Opinion delivered September 10, 2003

*Mercy, Carter, Tidwell & Elliott, L.L.P.*, by: *W. David Carter* and *John R. Mercy*; and *Boswell, Tucker & Brewster*, by: *Jim Jackson*, for appellants.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Beverly A. Rowlett*, for appellee.

Sam Bird, Judge. In this declaratory-judgment action, appellee Scottsdale Insurance Company (Scottsdale) sought a determination that a surplus-lines insurance policy it issued to appellant George Gawrieh excluded coverage for claims resulting from a shooting at his private club, appellant Georgio's, Inc., d/b/a Ace of Clubs. Appellant Gawrieh is the president of the club and the owner of the real property on which it operates. The circuit court granted summary judgment to Scottsdale and found that the policy did not provide coverage to either appellant for these claims. The primary issues in this appeal are whether the court erred in its construction of the policy; whether Scottsdale complied with Arkansas's insurance laws in amending the original policy to include the exclusion in question; and whether Scottsdale should be estopped to deny coverage. We believe that the court erred in construing the policy; we affirm its decision in part and reverse and remand in part.

### Procedural History

In December 1995, Scottsdale issued a one-year surplus-lines liability insurance policy for $500,000 to appellant George Gawrieh. In the document at issue, entitled Commercial General Liability Coverage Part/Supplemental Declarations, the business was described as a "private club." The original policy did not include an "assault and battery" exclusion. However, after an inspection of the club revealed that it employed bouncers, Scottsdale added such an exclusion. In March 1996, Scottsdale sent a notice to Gawrieh stating:

> The inspection for the captioned has been completed and attached is a list of recommendations. Please advise our office no later than 4-16-96 that these have been completed. Please call if you have any questions.

> Also, we will be adding [an] assault and battery exclusion to this policy due to the presene [sic] of bouncers.

The endorsement containing the assault and battery exclusion, which was mailed to appellant Gawrieh later that month, stated:

> This insurance does not apply to Bodily Injury or Property Damage arising from:
>
> A. Assault and Battery committed by any insured, any employee of any insured, or any other person, whether committed by or at the direction of any insured;
>
> B. The failure to suppress or prevent Assault and Battery by any person in A. above; or
>
> C. The negligent hiring, supervision or training of any employee of the insured.

Gawrieh eventually signed and returned the notice form to Scottsdale.

While the policy was in effect, on October 6, 1996, a patron at the club shot and killed one person and injured several others. The injured parties and the estate of the person who was killed sued appellants for negligence in the Miller County Circuit Court. Scottsdale then filed this action for declaratory judgment, arguing that the assault and battery endorsement to the policy excluded all claims arising out of the shooting incident. Appellant Gawrieh filed a counterclaim, arguing that the purported endorsement was ambiguous and seeking a declaratory judgment that the policy covered the claims. In his answer, Gawrieh asserted that Scottsdale had previously waived its defenses to coverage by sending him a letter that stated: "Contained within your policy there is a liability deductible endorsement for which you are responsible. We have been handling this claim on your behalf and a deductible is now owed. We are requesting reimbursement from you in the amount noted on the enclosed invoice." Included with this letter was an erroneous statement indicating that Scottsdale had already paid $21,189.37 for "loss" and $3,333.22 for "expense." There is no dispute that this computer-generated statement was sent to Gawrieh by mistake or that Scottsdale later notified Gawrieh of the mistake.

Both sides moved for summary judgment. The court granted partial summary judgment to Scottsdale, finding that the assault and battery endorsement was a valid addition to the policy,

pursuant to the requirements of Ark. Code Ann. § 23-65-311 (Repl. 2001), which applies to surplus and excess lines of insurance. The court also found that:

> the portion of the Arkansas Insurance Code entitled Minimum Standards B Commercial Property and Casualty Insurance Policies, and found at ACA 23-79-301, et. seq., and more specifically ACA 23-79-307 are not applicable to this case. *See Arkansas-Oklahoma Gas Company v. Lukis Stewart Forbes & Company*, 306 Ark. 425, 816 S.W.2d 571 (1991).

The court found that the assault and battery exclusion was not ambiguous and that it excluded coverage of the claims. The court also stated that the policy provided coverage only to the named insured, appellant Gawrieh, but it did not obligate Scottsdale to defend Gawrieh in the underlying negligence action. The court did not at that time decide the waiver, estoppel, and laches arguments raised by appellants.

In a motion for reconsideration, appellants argued that Scottsdale had withheld from them discovery documents indicating that it had subsequently changed its assault and battery exclusion. The court denied this motion, stating: "[T]he fact that [Scottsdale] changed the form of its policies issued thereafter does not sufficiently persuade or cause the Court to change its prior ruling ...."

Scottsdale moved for summary judgment as to the remaining waiver, estoppel, and laches issues. The court granted summary judgment to Scottsdale, stating:

> The [appellants'] allegations in this regard were based upon the written request of Scottsdale that Gawrieh pay a Two Hundred Fifty Dollar ($250.00) deductible pursuant to the provisions of the deductible endorsement of the policy, which the [appellant] Gawrieh did after consulting with counsel. Mr. Gawrieh incorrectly concluded based upon said written communication that the claim in the underlying case had been settled. The communication in question is a two page computer generated letter from Dan Hyduck with Scottsdale Insurance Company to George Gawrieh dated May 11, 1999 and attached to Scottsdale's Second Motion for Summary Judgment as Exhibits "B" and "C".

The communication in question contained an error as to the amount expended by Scottsdale in adjusting and defending the claim, which error was in part corrected by a second letter under date of January 17, 2000 to George Gawrieh from Cynthia Wyatt of Scottsdale Insurance Company, said second letter being attached as Exhibit "E" to Plaintiff's Second Motion for Summary Judgment.

....

The Court specifically finds that the statement and/or invoice sent to Mr. Gawrieh by the [Scottsdale] regarding the Two Hundred Fifty Dollar $250.00 deductible does not estop or prevent the [Scottsdale] from asserting its defenses or denying coverage of this claim. Further, the Court finds that Mr. Gawrieh's statements in his deposition indicated that he did not rely upon the statement to his detriment, nor did he change his position on the issue of coverage as a result of his receiving the statement. He did testify in his second deposition under date of September 21, 2000 that he thought the case was settled; but he did not do anything that materially altered his position in this or the underlying case to his detriment. Mr. Gawrieh did pay the Two Hundred Fifty Dollar ($250.00) deductible as requested, but this was an expense he would have incurred and was obligated to pay anyway by reason of Scottsdale's expenditures in defending the case, and the terms of the deductible endorsement.

....

The Court finds that the Two Hundred Fifty Dollar ($250.00) deductible under the policy would have been required to be paid by Mr. Gawrieh whether the required monetary amount was a loss paid to the Claimant or expenses paid for handling the litigation. Scottsdale has continuously asserted the position that there was no coverage under the policy, and Mr. Gawrieh continuously indicated his belief that there was coverage. Scottsdale had previously and consistently indicated that it was defending and participated in the underlying case and this matter while reserving its right to deny coverage. Neither party changed their position to their detriment or otherwise.

*Arguments*

Appellants make the following arguments on appeal: (1) the judge erred in holding that the assault and battery exclusion of the policy was not ambiguous; (2) the judge erred in denying their motion for reconsideration; (3) the judge erred in finding that Scottsdale had properly added the exclusion to the policy; (4) the judge committed error in finding that the policy did not cover Georgio's, Inc., d/b/a Ace of Clubs; and (5) the judge erred in finding that Scottsdale was not estopped from denying coverage. As explained below, even though the court applied the correct statute, it erred in holding that the endorsement was not ambiguous. Applying the appropriate rules of construction, we hold that the endorsement did not exclude coverage for the incident in question and that the policy did provide coverage to appellants Gawrieh and Georgio's. Accordingly, we need not consider the estoppel argument or whether the exclusion was properly added.

*Summary Judgment*

In reviewing summary-judgment cases, this court determines whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). Summary judgment is appropriate if different conclusions cannot be reached as to what the undisputed facts demonstrate. *See Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001).

*Addition of the Exclusion*

Appellants contend that the court erred in its application of Arkansas law regarding the exclusion. They assert that the issue is controlled by Ark. Code Ann. § 23-79-307 (Supp. 2001), which requires the acceptance and signature of an exclusion by the insured. We disagree. This statute is part of the statutory subchapter containing minimum standards for property and casualty insurance. It states in pertinent part:

> In addition to other applicable provision of the Arkansas Insurance Code, § 23-60-101 et seq., insurers and insurance policies subject to the provisions of this subchapter shall meet the following standards:

....

(3) Forms or endorsements issued after the policy inception date not at the request of the named insured which reduce, restrict, or modify the original policy coverage must be accepted and signed by the named insured ....

The trial court found that this statute does not apply in this case, citing *Arkansas-Oklahoma Gas Corp.v. Lukis Stewart Price Forbes & Co.*, 306 Ark. 425, 816 S.W.2d 571 (1991), which held that the specific provisions of the surplus-lines insurance law control over the general provisions of the insurance code. Instead, he found that Ark. Code Ann. § 23-65-311 (Repl. 2001), which specifically applies to surplus-lines insurers, is controlling. We agree.

Arkansas Code Annotated section 23-65-311 does not require that the insured consent to a material change in the policy; it simply requires that any material change in surplus-lines coverage be delivered to the insured. It provides in pertinent part:

(a) Upon placing a surplus lines coverage, the broker shall promptly issue and deliver to the insured evidence of the insurance, consisting either of the policy as issued by the insurer or, if the policy is not then available, the surplus lines broker's certificate. The certificate shall be executed by the broker and show the subject, coverage, conditions, and term of the insurance, the premium charged and taxes collected from the insured, and the name and address of the insurer. If the direct risk is assumed by more than one (1) insurer, the certificate shall state the name and address and proportion of the entire direct risk assumed by each such insurer.

(b) If, after the issuance and delivery of the certificate, there is any change as to the identity of the insurers, or the proportion of the direct risk assumed by the insurers as stated in the broker's original certificate, or in any other material respect as to the insurance coverage evidenced by the certificate, the broker shall promptly issue and deliver to the insured a substitute certificate accurately showing the current status of the coverages and the insurers responsible thereunder.

....

(d) Any surplus lines broker who knowingly or negligently issues a false certificate of insurance, or who fails promptly to notify the insured of any material change with respect to the insurance by delivery to the insured of a substitute certificate as provided in subsection (b) of this section, upon conviction, shall be subject to the penalties provided by § 23-60-108 or to any greater applicable penalty otherwise provided by law.

██ ██ Arkansas Code Annotated section 23-79-307, upon which appellants rely, is found in the statutory subchapter setting forth minimum standards for property and casualty insurance policies. Arkansas Code Annotated section 23-79-301 (Repl. 1999) sets forth the purpose of the subchapter:

The purpose of this subchapter is to provide minimum standards for commercial lines property and casualty insurance policies or contracts. These minimum standards are designed to minimize restrictions in coverage and to assure minimum standards for these commercial policies or contracts for the protection of the public. This subchapter is not intended to impede flexibility and innovation in the development of commercial property and casualty insurance policy or contract form or content. This subchapter is not intended to conflict with the provisions concerning insurance contracts in the Arkansas Insurance Code, 23-60-101 et seq., and, in particular, the provisions of § 23-60-105. This subchapter is not intended to conflict with nor apply to insurance policies and contracts of surplus line insurers operating in this state in compliance with 23-65-310.

The Reporter's Note to this statute states that the last sentence was added by the General Assembly in 1999. The exception set forth in Ark. Code Ann. § 23-79-303(9) (Repl. 1999), which provides that this subchapter does not apply to "large commercial risks," was also added in 1999. Even though those amendments were added to the statutes after the insurance policy in dispute was issued, they are helpful in determining the General Assembly's intent as to the application of that subchapter to surplus-lines insurance policies. *See Bourne v. Board of Trustees of the Little Rock Policeman's Relief Pension Fund*, 347 Ark. 19, 59 S.W.3d 432 (2001); *Arkansas County v. Desha County*, 342 Ark. 135, 27 S.W.3d 379 (2000); *American Cas. Co. v. Mason*, 312 Ark. 166, 848 S.W.2d 392 (1993).

■ Accordingly, we hold that the court applied the correct statute to this surplus-lines policy. However, as explained below, our construction of the exclusion leads us to conclude that coverage for the incident in question is not excluded, even if Scottsdale complied with the proper statute in adding the exclusion. Although a genuine issue of material fact may exist as to whether Scottsdale followed Ark. Code Ann. § 23-65-311(b) and properly delivered the endorsement to Mr. Gawrieh, whether it did so is immaterial to the result in this appeal. Even if the endorsement was properly delivered, it would not exclude coverage for this incident because, as explained below, it is ambiguous and must be construed in the insured's favor. If it was not delivered .to the insured, the endorsement would have no effect and the original policy would continue to provide coverage. In either case, the result would be the same. Because the determination of the delivery question would have no effect on the outcome of this appeal, we need not remand that issue to the trial court.

### Construction of the Insurance Policy

Appellants contend that the assault and battery endorsement is ambiguous and that, following the rules of construction, the court should have resolved the ambiguity in their favor. According to appellants, the exclusion can be read as excluding coverage only for assaults committed "by or at the direction of the insured" and not by those committed by patrons. We agree.

■ In reviewing an insurance policy, the appellate court submits to the principle that, when the terms of the policy are clear, the language in the policy controls. *Columbia Mut. Ins. Co. v. Home Mut. Fire Ins. Co.*, 74 Ark. App. 166, 47 S.W.3d 909 (2001). The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Norris v. State Farm Fire & Cas. Co., supra.* If a policy provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction; if, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, the policy will be construed liberally in favor of the insured and strictly against the insurer. *Id.* Whether the language of a policy is ambiguous is a question of law to be resolved by the court. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it

is fairly susceptible to more than one reasonable interpretation. *Elam v. First Unum Life Ins. Co., supra.*

■ We believe that the language of the endorsement is fairly susceptible to more than one reasonable interpretation, and that it is, therefore, ambiguous. Although it can be read as excluding all assaults and batteries, including those committed by third parties, it can also be construed as applying only to assaults and batteries committed by or at the direction of the insured. Applying the rules of construction, as we must, we hold that the policy does not exclude coverage for this incident.

### Coverage of the Club

■ Appellants further contend that the court erred in finding that the insurance policy does not provide coverage for the club. Again, we agree. Although only appellant Gawrieh is listed as the named insured, the policy describes the business as a private club. It is, therefore, reasonable to construe the policy as also providing coverage for the private club operated by Gawrieh, the named insured. When policy language is susceptible to more than one reasonable interpretation, it is ambiguous and will be liberally construed in favor of the insured and strictly against the insurer. *Norris v. State Farm Fire & Cas. Co., supra.* Therefore, we hold that the protection offered by the policy also extends to appellant Georgio's.

### Subsequent Changes to Similar Policies

■ Appellants contend, without citation to authority, that the court erred in denying their motion for reconsideration because Scottsdale withheld information about subsequent changes it made in the language of assault and battery exclusions in similar policies. According to appellants, such changes are tacit admissions that the exclusion in dispute is ambiguous. We need not, however, address this question. An assignment of error unsupported by convincing argument or authority will not be considered on appeal unless it is apparent, without further research, that the assignment of error is well taken. *Smith v. Smith,* 41 Ark. App. 29, 848 S.W.2d 428 (1993).

Accordingly, appellants Gawrieh and Georgio's are entitled to a declaratory judgment holding that the policy provided cov-

erage for these claims. We affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

STROUD, C.J., and HART, ROBBINS, and BAKER, JJ., agree.

GLADWIN, GRIFFEN, VAUGHT, and CRABTREE, JJ., dissent.

ROBERT J. GLADWIN, Judge, dissenting. While agreeing with the majority opinion in other regards, I dissent from the conclusion that the language of the assault and battery endorsement is ambiguous. In my view, the exclusion unambiguously excludes all assaults, including those committed by patrons. I would, therefore, affirm the trial court's finding that the policy did not provide coverage for appellants' claims.

The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Insurance Co. of North America v. Forrest City Country Club*, 36 Ark. App. 124, 819 S.W.2d 296 (1991). Under Arkansas law, the intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language. *Baskette v. Union Life Ins. Co.*, 9 Ark. App. 34, 652 S.W.2d 635 (1983). In order to be ambiguous, a term in an insurance policy must be susceptible to more than one reasonable construction. *Insurance Co. of North America, supra.* If the terms of an insurance contract are not ambiguous, it is unnecessary to resort to the rules of construction; in such cases, the policy will not be interpreted to bind the insurer to a risk which it plainly excluded and for which it was not paid. *First Financial Insurance Co. v. National Indem. Co.*, 49 Ark. App. 115, 898 S.W.2d 63 (1995).

The endorsement containing the assault and battery exclusion stated:

> This insurance does not apply to Bodily Injury or Property Damage arising from:
>
> A. Assault and Battery committed by any insured, any employee of any insured, *or any other person*, whether committed by or at the direction of any insured (emphasis added);
>
> B. The failure to suppress or prevent Assault and Battery by any person in A. above; or

C. The negligent hiring, supervision or training of any employee of the insured.

Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose. *First Financial, supra.* It is well settled that the intent of the parties is to be determined from the whole context of the agreement and that the court must consider the instrument in its entirety, not merely disjointed or particular parts of it. *Alberson v. Automobile Club Interins. Exch.*, 71 Ark. App. 162, 27 S.W.3d 447 (2000).

I believe the language of the policy clearly reflects the intent to exclude coverage for assault and battery committed by the insured, an employee, or any other person. A patron qualifies as "any other person." The language of Subsections A and B, read together as part of the instrument in its entirety and construed in its plain and ordinary sense, excludes all assaults and not just those committed by or at the direction of the insured. I see no ambiguity here, thus no reason to bind the insurer to a risk that it plainly excluded. Therefore, I respectfully dissent.

GRIFFEN, VAUGHT and CRABTREE, JJ., agree.