Argued and submitted February 28, affirmed November 15, 2000

## STK ENTERPRISES, INC.,
an Oregon corporation,
dba The Refectory,
*Appellant,*

*v.*

## CRUSADER INSURANCE COMPANY,
a California corporation,
*Respondent.*

(9709-07387; CA A102476)

14 P3d 638

Michael J. Esler argued the cause for appellant. With him on the briefs was Esler, Stephens & Buckley.

Thomas M. Christ argued the cause for respondent. With him on the briefs was Mitchell, Lang & Smith.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff operates The Refectory, a restaurant and bar in Portland. In this case, it seeks to recover from defendant, its insurer, the cost of defending and settling three customers' claims of racial discrimination. The trial court granted defendant's motion for summary judgment, ORCP 47, and plaintiff appeals. We affirm.

We first consider plaintiff's claims for the costs of defending the claims. To determine whether an insurer has a duty to defend an action against its insured, we compare two documents, the complaint filed against the insured and the insurance policy. If the complaint alleges facts that, if proved, would impose liability covered by the policy, the insurer must defend. *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994); *American Hardware Ins. Group v. West One Auto.*, 167 Or App 244, 247, 2 P3d 413 (2000). In accordance with that legal standard, we state the facts as they appear in the complaints in the underlying actions.[1]

The three claims involve two incidents. According to the amended complaints in the Taylor and Whitehurst cases, the plaintiffs in these cases, who are African-American, went to The Refectory on May 10, 1996, between 11:00 and 11:30 p.m. When they tried to enter, a security guard approached them and told them that they could not come in. They alleged that the guard ordered them to get off the premises because they were African-American, thereby violating their rights under ORS 30.670. Whitehurst also alleged that the guard prevented him from using a telephone in the lobby of The Refectory to call the police. Each plaintiff sought damages of $35,000, plus attorney fees.

According to the complaint in the Lomax case, the plaintiff, also an African-American, sought admission to The Refectory on August 11, 1995, and offered to pay the required cover charge. However, the door guard refused the money and denied him entry. During the time while the plaintiff

---

[1] In its briefs, plaintiff describes many facts in addition to those that are in the complaints. Because those facts are irrelevant to defendant's duty to defend, and because they have no effect on its duty to indemnify, we do not discuss them further.

was on the premises, white patrons, similar to him in age and attire, were admitted. The plaintiff also alleged that the Refectory had engaged in a pattern and practice of refusing admission to African-American individuals. Lomax brought his claim under 42 USC § 1981 and sought $50,000 in damages, an injunction barring The Refectory from engaging in such discrimination in the future, and attorney fees.

Plaintiff tendered the defense of each of these claims to defendant, which refused the tenders.[2] Plaintiff then defended the claims on its own. The Taylor and Whitehurst claims went to mandatory court-annexed arbitration. The arbitrator found against plaintiff and awarded damages. Plaintiff then settled those claims. The record does not indicate the current status of the Lomax claim.

On appeal, plaintiff argues that two portions of the policy provide coverage for these claims. The first is the "personal injury" coverage, which provides coverage for injuries, other than "bodily injury" (as the policy defines the term), that arise from a number of named "offenses":

"a.   False arrest, detention or imprisonment;

"b.   Malicious prosecution;

"c.   Wrongful entry into or eviction of a person from, a room, dwelling or premises that the person occupies;

"d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, product or services; or

"e.   Oral or written publication of material that violates a person's right of privacy."

Plaintiff argues that there is coverage under paragraph "c" because the underlying plaintiffs asserted a right to occupy a

---

[2] Plaintiff first tendered the defense of the Taylor and Whitehurst claims when it received a demand letter from the underlying plaintiffs' attorney, before they had filed their complaints. Plaintiff asserts, without any citation of authority, that that letter constituted a "complaint" and that we should look to it in determining defendant's duty. Assuming without deciding that plaintiff is correct, the complaints in the lawsuits that Taylor and Whitehurst subsequently filed became the operative complaints for the purposes of determining coverage, superseding the letter. Plaintiff does not separately seek its costs of defense for the period between the letter and the filing of the lawsuits.

portion of the premises of The Refectory and the basis for their claims was that plaintiff had evicted them from those premises in violation of the public accommodations laws. Plaintiff asserts that the underlying complaints alleged, or could legitimately be construed to allege, that the underlying plaintiffs were on some portion of the premises of The Refectory when they were told to leave.[3]

Resolving what an insurance policy means involves determining the intent of the parties from the terms and conditions of the policy. If the meaning of a policy term is unambiguous, the parties' intent is conclusively established, and our inquiry is ended.

■ The essential predicate to plaintiff's argument is that the policy offense of "wrongful eviction" includes improperly removing a person from property where the person is legally present but in which the person has no possessory interest. A customer or prospective customer of a commercial establishment is a licensee or invitee of the owner; the customer does not ordinarily have a possessory interest in the property. Thus, limiting of coverage to claims brought by those with possessory interests would exclude the coverage of the claims in this case. In two recent cases, we and the Supreme Court have held that coverage under provisions similar to those on which plaintiff relies requires an allegation of a possessory interest. The reasoning of those cases applies here.

In *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 985 P2d 1284 (1999), the underlying claim involved an alleged violation of federal housing laws from the refusal to rent an apartment to a woman with a child. The applicable insurance policy defined "personal injury" to include "wrongful entry or eviction, or other invasion of the right of private occupancy." *Id.* at 306. The issue was whether the refusal to rent constituted an "other invasion of the right of private occupancy"; the parties agreed that the facts did not constitute a wrongful entry or eviction. The Supreme Court

---

[3] Plaintiff also asserts that there is coverage under paragraph "a" for the policy offense of "false imprisonment." Its argument is based on the literal meaning of a patently inappropriate dictionary definition of "detain" and is at odds with the well-established case law describing the tort of false imprisonment. We reject that argument without further discussion.

analyzed the policy's terms in accordance with the framework that it had established in *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-71, 474-75, 836 P2d 703 (1992), and ultimately concluded that a "right of private occupancy" referred to interests similar to possession rather than to interests in a future possibility of possession.

In deciding *Groshong*, the court construed the phrase "other invasion of the right of private occupancy" in light of the immediately preceding reference in the policy to "wrongful entry or eviction." It emphasized that a claim for a wrongful entry or eviction must be a claim for an interference with a possessory interest: "[A] person cannot suffer a wrongful entry or eviction until that person actually occupies — or at least has a legally cognizable possessory interest in — a particular premises." 329 Or at 313. Construing the word "other" in context with the preceding clause, the court held that the policy's coverage applied only to claims involving possessory interests. *Id.* at 313-14.

In *American Hardware Ins. Group*, the plaintiff in the underlying case brought an action for wrongful termination of employment for having opposed the insured's allegedly improper practices. The plaintiff did not allege that the insured had evicted him from or dispossessed him of a right to remain on its premises. As in this case, the insurance policy provided coverage for a claim for the "offense" of "wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies." 167 Or App at 250. The insured argued that the termination of the plaintiff necessarily involved forcing him out of and expelling him from the insured's premises. According to the insured, the plaintiff's occupation of the insured's premises during his work time and his subsequent ouster sufficed to afford coverage under the policy. We concluded that the insured's argument was implausible, both because the specific context of the terms obviously referred to a person who had asserted a possessory or other legal right to occupy particular premises and because the context of the policy as a whole demonstrated that the parties recognized a distinction between claims for eviction and claims for wrongful termination of employment. *Id.* at 250-51.

■ The holdings in *Groshong* and *American Hardware Ins.* are controlling regarding the policy language involved in this case. A "wrongful eviction" within the context of plaintiff's policy connotes an improper ouster from a possessory interest in property. Here, the underlying plaintiffs had no possessory interest in The Refectory. It follows based on the plain language of the policy that there is no coverage under paragraph "c" for the claims made by the underlying plaintiff.[4]

■ Plaintiff next argues that defendant had a duty to defend it under the policy's liquor liability coverage. That coverage obligates defendant to "pay those sums that the insured becomes legally obligated to pay" because of a covered injury "if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." Nothing in the underlying complaints suggests that plaintiff refused to serve Taylor, Whitehurst, or Lomax because of anything related to the selling, serving, or furnishing of an alcoholic beverage. Although plaintiff asserts that it acted in a good faith attempt to comply with Oregon Liquor Control Commission (OLCC) regulations concerning selling, serving, or furnishing alcohol, the only support for that argument comes from evidence that is outside the complaints themselves. That evidence is irrelevant to the duty to defend. *See Weber v. Chicago Title Ins, Co.*, 169 Or App 24, 29-30, 7 P3d 714 (2000). The court correctly granted summary judgment to defendant on its duty to defend plaintiff.

■ The duty to indemnify, unlike the duty to defend, does not depend on the allegations of the complaint; rather, that duty arises from the facts proved at trial. Thus, even when there is no duty to defend, the facts at trial may show that the policy covers the insured's conduct and thus create a

---

[1] Plaintiff relies on *Z.R.L. Corp. v. Great Cent. Ins. Co.*, 156 Ill App 3d 856, 510 NE2d 102 (1987), in which the court held that an insurer had a duty to defend a restaurant against a claim of racial discrimination, to support its argument. As the California Court of Appeals noted in *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal App 4th 1252, 1264-65, 66 Cal Rptr 2d 356, 363-64 (1997), the policy in *Z.R.L.* and the policy in this case, which is identical to the policy in *Zelda, Inc.*, are significantly different. In any event, we agree with the California court's reasons for refusing to follow the reasoning of the *Z.R.L.* court.

duty to indemnify the insured for the damages that it had to pay. *See Ledford*, 319 Or at 403. In this case, the record before us does not disclose any possessory interest held by the underlying plaintiff. As in the underlying complaints themselves, there is nothing in the record upon which to base a conclusion that the plaintiffs were wrongfully evicted.

■ Finally, we turn to the claim for indemnity under the liquor liability coverage. The underlying plaintiffs' theories were based on violations of the Oregon Public Accommodations Act and the federal civil rights laws and were litigated under those laws. There is evidence to support defendant's assertion that it refused entry to Taylor and Whitehurst in a misguided effort to comply with OLCC regulations.[5] That evidence, however, does not create an issue of fact about whether defendant had a duty to indemnify plaintiff under the liquor liability provisions of the policy. Plaintiff does not assert, and the evidence would not support a finding, that plaintiff acted under the liquor laws in a manner that would make it liable to the underlying plaintiffs, and nothing in the record suggests that the underlying plaintiffs sought to recover under the liquor laws. Rather, plaintiff raised the issue of its obligation under the liquor laws to demonstrate that it did not act for a discriminatory reason. That is, the role of the liquor laws was as a defense to the underlying plaintiffs' claims of illegal racial discrimination, and not as a basis for recovery. If plaintiff were successful on that defense, the result would be that it would avoid liability to the underlying plaintiffs. In the absence of that liability, there would be nothing for which plaintiff could seek indemnity from defendant. If plaintiff were unsuccessful on that defense, the underlying plaintiffs would recover on a basis other than the liquor laws, and defendant would have no duty to indemnify plaintiff for the resulting judgment. In short, because the liquor laws are relevant only as a defense rather than as a basis for plaintiff's liability, defendant had no duty to indemnify it under the liquor liability provisions of the policy.

Affirmed.

---

[5] Plaintiff does not describe the underlying facts in the Lomax case or otherwise suggest how those facts might relate to OLCC regulations.