**WESTFIELD INSURANCE GROUP,**
**Plaintiff Below, Appellant,**

v.

**J.P.'S WHARF, LTD. and Peter Russo,**
**Defendants Below, Appellees.**

**No. 26, 2004.**

Supreme Court of Delaware.

Submitted: July 14, 2004.

Decided: Sept. 17, 2004.

---

**33.** *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir.1989) (quoting 6 Moore's Federal Practice ¶ 55.05(3)).

Brian E. Lutness, of Silverman, McDonald & Friedman, Wilmington, for Appellant.

Bradley S. Eaby, of Barros, McNamara, Malkiewicz & Taylor, P.A., Dover, for Appellees.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice:

■ In this appeal, we consider whether a commercial insurance policy covers amounts paid by a restaurant for racial discrimination. The policy defines "personal injury" to include "wrongful eviction," among other intentional torts, and the trial court held that the wrongful eviction clause clearly and unambiguously affords coverage for discriminatory acts. We agree with the conclusion that the policy language is clear and unambiguous. But we hold that the wrongful eviction clause only applies to the eviction of claimants having a possessory interest in the premises. Since the patrons who were refused service at the restaurant had no possessory interest in the premises, the restaurant's expenses in resolving the patrons' claims are not covered under the insurance policy.

### Factual and Procedural Background

In 2001, the State Human Relations Commission found that J.P.'s Wharf Restaurant, and its owner, Peter Russo (collectively "Wharf"), engaged in racial discrimination when Wharf refused to serve certain patrons and ordered them to leave. The Commission ordered Wharf, among other things, to pay damages totaling $6,000 to the complaining patrons, and to pay a $5,000 civil penalty. At all relevant times Wharf was insured by Westfield Insurance Group, under a commercial policy that provides coverage for "personal injury," defined as: injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of

private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person...; or

e. Oral or written publication of material that violates a person's right of privacy.

After Wharf filed an insurance claim for expenses related to the discrimination complaint, Westfield sought a declaratory judgment that its policy does not cover those expenses. The Superior Court held that the "wrongful eviction" clause provides coverage for Wharf's discriminatory conduct. This appeal followed.

### Discussion

 The sole issue is the scope of the coverage provided under the Westfield insurance policy. We consider this question of law *de novo*.[1] Under settled principles, "if the relevant contract language is clear and unambiguous, courts must give the language its plain meaning."[2] If the provision is ambiguous, it will be "read in a way that satisfies the reasonable expectations of the average consumer."[3] The language is deemed "ambiguous" if it is "reasonably ... susceptible of different interpretations."[4]

Several other jurisdictions have considered similar policy language, reaching different conclusions. In *Insurance Company of North America v. Forrest City Country Club*,[5] for example, the policy language defined "personal injury" to include "wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies...." The Arkansas appellate court found the language ambiguous, as "eviction" could mean interference with a possessory property interest or, if used in its popular sense, simply the process of being forcefully removed or ejected from a particular location. Giving the insured the benefit of a liberal construction, the Arkansas court held that the insurer had a duty to defend a claim of racial discrimination brought by a woman who was barred from playing tennis at the insured's country club.

In *STK Enterprises, Inc. v. Crusader Insurance Company*,[6] the insured sought coverage for the costs of defending and settling three racial discrimination claims brought by patrons who were refused entry into the insured's restaurant and bar. An Oregon appellate court held that the same "wrongful eviction" clause as that considered in *Forrest City* covers only claims arising from a possessory interest in the property. Similarly, in *Zelda v. Northland Insurance Company*,[7] a California appellate court concluded that the same "wrongful eviction" language covers tort claims involving interference with an interest in real property, not claims made by business patrons.[8]

---

1. *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 686 A.2d 152 (Del.1996).

2. *Phillips Home Builders, Inc. v. Travelers Insurance Company*, 700 A.2d 127, 129 (Del. 1997).

3. *Continental Insurance Company v. Burr*, 706 A.2d 499, 501 (Del.1998).

4. *Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992).

5. 36 Ark.App. 124, 819 S.W.2d 296 (1991).

6. 171 Or.App. 9, 14 P.3d 638 (2000).

7. 56 Cal.App.4th 1252, 66 Cal.Rptr.2d 356 (1997).

8. We note that the Superior Court relied on *Z.R.L. Corporation v. Great Central Insurance Company*, 156 Ill.App.3d 856, 109 Ill.Dec. 481, 510 N.E.2d 102 (1987), in support of its conclusion that racial discrimination claims are covered by Westfield's "wrongful evic-

We are satisfied that Westfield's "wrongful eviction" clause plainly requires that the claim involve a possessory interest in property, and adopt the reasoning of the *Zelda* court:

> [A]n insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other. The proposal that the policy definition covers any wrongful "eviction," understood in the popular sense, fails to give the phrase "from, a room, dwelling or premises that the person occupies" a function in the definition. Because an eviction, popularly understood, is necessarily from *somewhere* the phrase in question is redundant unless it means something other than merely "from somewhere." In this regard, we observe that the term "to occupy," in one of its popular senses, means "to reside in as an owner or tenant." Thus, the only reasonable explanation for the additional phrase is to clarify that the wrongfulness of the ejection must consist in, or attach to, an invasion of the right of occupation.[9]

Since the patrons who filed their racial discrimination complaints against Wharf had no possessory interest in the restaurant premises, the "wrongful eviction" provision in Wharf's insurance policy does not cover expenses it incurred in resolving those complaints.

## Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed.

tion" clause. The *Z.R.L.* clause, however, did not mirror Westfield's. Moreover, in *Z.R.L.*, the insurer conceded that its policy would cover a claim by a patron removed from the premises because of rowdiness.

**9.** 66 Cal.Rptr.2d at 364 (Emphasis in original. Citations omitted.)