**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3505-21

WATFORD SPECIALTY
INSURANCE COMPANY,

      Plaintiff-Respondent,

v.

MDF 92 RIVER STREET,
LLC, d/b/a WILD MOOSE
SALOON & THE BIRCH,

      Defendant-Respondent,

and

MATTHEW GARCIA and
DASHON BROWN,

      Defendants,

and

DENIS MUCHA,

      Defendant-Appellant.

_____

Argued November 15, 2023 – Decided December 22, 2023

Before Judges Currier, Firko, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1168-21.

William L. Gold argued the cause for appellant (Bendit Weinstock, PA, attorneys; William L. Gold, on the briefs).

Timothy M. Jabbour argued the cause for respondent (Tressler LLP, attorneys; Timothy M. Jabbour and Neli Kharbedia, of counsel and on the brief).

PER CURIAM

This insurance coverage dispute arises from an incident in which defendant Denis Mucha[1] sustained injuries after he was assaulted by employees at defendant MDF 92 River Street, LLC d/b/a Wild Moose Saloon and The Birch (MDF) (the bar) in Hoboken while a patron. Plaintiff Watford Specialty Insurance Company (Watford) insures MDF. Watford filed a declaratory judgment action seeking a declaration that its obligation to provide insurance coverage to MDF arising out of Mucha's lawsuit were satisfied under its endorsement for assault and battery claims, and Watford's $1,000,000 limit of liability had been exhausted.

---

[1] Mucha was the plaintiff in the underlying matter, <u>Denis Mucha v. Birch Hoboken, Matthew Garcia, and Dashon Brown</u>, HUD-L-0497-20 (the Mucha lawsuit). Watford provided a defense to MDF for Mucha's claims in his lawsuit.

Mucha appeals from two Law Division orders entered on June 21, 2022, denying his motion for summary judgment and granting Watford's cross-motion for a declaratory judgment barring coverage beyond the $192,325.51 amount that was already paid to Mucha. After reviewing the terms of the insurance contract in light of the governing legal principles, relevant facts, and arguments of the parties, we affirm both orders.

I.

Viewed in the light most favorable to Mucha, Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016), the pertinent facts are as follows. In March 2018, Mucha was a patron at the bar, leased by MDF from Newark and River, LLC. Mucha alleged defendants Matthew Garcia and Dashon Brown, bouncers at the bar, negligently assaulted him resulting in "severe and permanent" injuries. Mucha alleged Garcia's and Brown's conduct was "intentional but having unintended results," and was "malicious, wanton, and reckless." In his complaint, Mucha also alleged MDF "recklessly, carelessly, and/or negligently fail[ed] to properly hire, retain, train and/or supervise competent security," resulting in his injuries.

Watford issued a Commercial General Liability Policy (the Policy) to MDF. The Policy provided coverage up to $1,000,000 per occurrence and in the

A-3505-21

aggregate. There were five losses during the relevant Policy period, including Mucha's claim. The Policy contained a "Commercial General Liability Coverage Part," (Commercial Liability Part), which states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The Policy's Endorsement for "Assault or Battery Exclusion" modifies the Commercial Liability Part, which provides in pertinent part:

> This insurance does not apply to, and we have no duty to defend or indemnify any insured or any other person against, any loss, claim or "suit" for "bodily injury", "property damage", "injury" or "personal and advertising injury", including claims or "suits" for negligence, directly or indirectly, actually or allegedly, arising out of or related to any: assault, battery, . . . whether committed by any insured, patron, agent, employee, or any other individual.

This Exclusion applies regardless of fault or intent.

The Policy's Endorsement for "Limited Coverage Assault or Battery Related Claims" (Assault or Battery Related Claims Endorsement) also modifies the Commercial Liability Part and provides in pertinent part:

4

In consideration of premiums paid, it is agreed that the specific coverage excluded by Form ER 10 05 10 15, Assault or Battery Exclusion is reinstated on a limited basis in accordance with the following additional terms and conditions:

Subject to the limits set forth below this insurance applies to any loss, claim, "suit" or expense for "bodily injury," "property damage," or "personal and advertising injury" including claims or "suits" for negligence, directly or indirectly arising out of, actually or allegedly arising out of, or related to any: assault, battery, molestation, abuse, harmful or offensive contact, false arrest, wrongful detention, false imprisonment, malicious prosecution or threat; whether committed by a patron, employee, or any other individual.

This endorsement applies regardless of fault or intent.

For purposes of this endorsement, negligence includes but is not limited to allegations or claims for: negligent hiring, negligent employment, negligent training, negligent supervision, failure to intervene, failure to render aid, failure to contact law enforcement, failure to contact emergency medical services or failure to detain potentially responsible parties.

The Policy also contains a "Non-Stacking of Limits Endorsement," and a provision entitled "Coverage B—Personal and Advertising Injury Liability" (Coverage B), which states in pertinent part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to

5

> defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

The Policy defines "Personal and Advertising Injury Liability," in relevant part, as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; . . . .

On June 22, 2018, Watford sent a letter to MDF regarding Mucha's claim, advising there was a sublimit of coverage for assault or battery related claims up to $1,000,000 per occurrence and in the aggregate. On December 22, 2020, Watford advised Mucha's counsel that there were five losses during the Policy period, including Mucha's claim. The letter advised that as of December 18,

2020, the four other losses were resolved for a total pay-out of $799,920.53, leaving a remainder of $200,079.47 on the Policy's eroding limits.[2]

A week later, Mucha filed a motion for leave to file and serve an amended complaint to add a claim for wrongful eviction. Mucha alleged MDF, Garcia, and Brown "wrongfully evicted [him] from the premises that he was occupying causing him severe bodily injury," in addition to alleging Garcia "negligently assaulted" him.

On April 26, 2021, Mucha made a settlement demand of $550,000. As of that time, $199,062.51 remained on MDF's Policy, which Watford offered to Mucha in exchange for a full and complete release of all claims, subject to further reduction based upon ongoing litigation expenses.[3] Watford advised MDF that $800,937.49 in payments had been made under its Policy. Watford advised MDF it was offering the remaining available limits under its Policy in exchange for a full and complete release of all claims in the Mucha lawsuit. The

---

[2] The December 22, 2020 letter advised that these aggregate amounts were "subject to fluctuation depending on ongoing expenses which are included and deducted from the aggregate limit."

[3] This amount, communicated in the May 26, 2021 letter, reflects an update from the amount noted in the December 18, 2020 letter. The letter also advised that "[a]s the Mucha lawsuit is currently ongoing, the remaining available limits are subject to further reduction based upon ongoing expenses with the litigation."

matter did not settle. Watford advised MDF to consider retaining personal counsel in light of the potential exposure MDF could face in the Mucha lawsuit.

On May 26, 2021, Watford filed a complaint for declaratory judgment seeking a declaration that it had satisfied all of its obligations to MDF under its Policy. On June 10, 2021, Watford filed an amended declaratory judgment action, the operative pleading in this action, seeking to declare:

> (1) the Watford Policy affords coverage to MDF, Garcia, and Brown in connection with the Mucha Lawsuit under the Endorsement for Limited Coverage Assault or Battery Related Claims;
>
> (2) that subject to the eroding limits, the per Occurrence and Aggregate Limits in the Endorsement for Limited Coverage Assault or Battery Related Claims is the most Watford must pay in connection with the Mucha Lawsuit;
>
> (3) that Watford will not be obligated to pay any judgments, settlements, defense costs, loss adjustment expenses, claim(s) or "suit(s)" or to defend or to continue to defend any loss, claim or "suit" after the applicable limit of liability has been exhausted by payments of judgments, settlements, defense costs, or loss adjustment expenses; [and]
>
> (4) for counsel fees and costs.

Mucha filed an answer and counterclaim contending he was entitled to "coverage for his loss," and "co-defendants are entitled to a full defense."

On September 30, 2021, an arbitration award was entered in the Mucha lawsuit in Mucha's favor in the gross amount of $500,000. The arbitrator found MDF, Garcia, and Brown 90% liable for the incident and Mucha 10% liable, making the net award to Mucha $450,000. The arbitrator noted on the award that "[t]his is a matter of a wrongful eviction and/or assault and battery. [Mucha] was a patron in the Birch night club in Hoboken on the third floor."

As a result of Mucha allegedly engaging in verbal altercations with other patrons, the arbitrator determined Garcia and Brown approached Mucha and asked him to leave, but he refused to do so. The arbitrator found Garcia then grabbed Mucha, "pulled him toward the stairs," and "threw him down the stairs," resulting in physical injuries. The arbitrator noted MDF contended Mucha "resisted leaving" and "reasonable force was used to remove [him] from the premises, and [he] . . . lost his balance and fell down the stairs while resisting his eviction."

On November 8, 2021, a consent order was entered in the Mucha lawsuit dismissing all claims against Garcia and Brown with prejudice. Mucha filed a motion to confirm the arbitration award. The motion was unopposed. On November 19, 2021, the court granted the motion, confirmed the arbitration award, and entered final judgment pursuant to Rule 4:21A-6(b)(3), in favor of

Mucha and against MDF in the amount of $450,000, plus pre-judgment interest in the amount of $32,220, for a total award of $482,220.

On December 7, 2021, MDF entered into a Settlement Agreement and Assignment (Assignment), assigning all of its rights to Mucha it may have had against Watford with respect to the Mucha matter and coverage under the Policy in exchange for a release of all claims for any uninsured compensatory and punitive damages. In addition, MDF agreed to pay Mucha $25,000 within seven days of the execution of the document and an additional $8,000 within seven days of the entry of judgment.

On February 1, 2022, after filing its declaratory judgment action, Watford issued payment to Mucha in the amount of $192,325.21,[4] which represented the remaining amount within the aggregate limit of the Policy. On April 15, 2022, Mucha filed a motion for summary judgment asserting that the balance of $257,674.79 plus interest[5] was owed to him by Watford under his assignment

---

[4] Mucha's appellate brief states that the amount is $192,325.21, but Watford's brief states the amount is $192,325.51. We use the amount stated in Mucha's brief because the calculations would not otherwise add up correctly. $257,674.79 plus $192,325.21 equals $450,000, which is the total arbitration award amount, exclusive of interest.

[5] The court's statement of reasons notes that Mucha argued the total remaining balance of the judgment is $289,894.49. This is calculated by subtracting

from MDF. The balance was calculated by subtracting $192,325.21, which was paid by Watford on February 1, 2022, from the $482,220 final judgment.

Watford cross-moved for summary judgment contending that all of the claims asserted in the Mucha lawsuit stemmed from the alleged assault. Based on the "clear and unambiguous language" of the Assault or Battery Related Claims Endorsement, Watford claimed it had no duty to defend after its applicable limit of liability had been exhausted. Watford maintained it advised MDF and Mucha with respect to the eroding limits of the Policy.

In particular, Watford asserted that since coverage under the Endorsement applies to the same occurrence, the aggregate limit under the Endorsement is the applicable limit of the occurrence. Watford also noted that the Policy includes a Non-Stacking of Limits Endorsement.

Watford represented it advised MDF that Mucha could not be awarded damages in excess of the limit of liability under the Policy, but Mucha could pursue any amount above the limit of the Policy directly from MDF's assets. Watford also argued that Mucha could not demonstrate he had a possessory

---

$192,325.51 from $482,220, which includes the arbitration award of $450,000 plus pre-judgment interest of $32,220. Nevertheless, Mucha's merits brief mentions that the remaining balance should be $257,674.79 plus interest ($32,220), equaling $289,894.79. This amount is calculated by subtracting $192,325.21 from $482,220.

interest in MDF; thus, any claim for coverage based on a claim of wrongful eviction failed. Watford sought a declaration that it satisfied its obligations with respect to the Mucha lawsuit, and any unsatisfied portion of the judgment did not fall within the coverage afforded by the Policy.

In opposition to Watford's cross-motion, Mucha argued his claim was for wrongful eviction, not an assault and a battery. He contends his complaint did not plead "assault and battery," but instead described defendants' actions as "negligent." Mucha averred the Policy provides separate coverage for wrongful eviction, not subject to any exclusions. Mucha contended he was not required to have a possessory interest in the bar's premises to be deemed evicted pursuant to the Policy terms. Since Mucha was "clearly occupying the premises" at the time of the incident, he claimed he should be covered under the Policy's wrongful eviction provision.

Mucha contended Watford used the phrase "a room, dwelling, or premises that a person occupies" in its wrongful eviction provision, which should be interpreted to cover general occupancy of the bar, not only a possessory interest. Mucha averred wrongful eviction was expressly excluded from the Assault or Battery provision in the Policy. He argued the terms within the Policy are

defined, and the words "wrongful," "eviction," "premises," and "occupies" must be given their ordinary meaning.

In the alternative, Mucha claimed Watford adjusted the prior claim under the Commercial Liability Part; thus, there was sufficient remaining coverage under the Assault or Battery Related Claims Endorsement to pay the balance of his judgment. Additionally, Mucha argued he is entitled to counsel fees and interest on the payment made by Watford because pursuant to Rule 4:42-9(a)(6), "he was a successful claimant."

Mucha also asserted Watford's cross-motion should be denied because "bad faith is always a question of fact." According to Mucha, there were two questions of fact: (1) whether Watford settled the prior claim in good faith; and (2) why Watford failed to consider the wrongful eviction claim. In support of his arguments, Mucha asserted the arbitrator found the case was about both a "wrongful eviction and/or assault and battery." Since Watford failed to oppose Mucha's motion to confirm the arbitration award and enter final judgment, Mucha maintained Watford is "now estopped from disputing" the arbitrator's findings on this issue.

On June 2, 2022, the court conducted oral argument on the motions and reserved its decision. On June 21, 2022, the court entered orders denying

Mucha's motion for summary judgment and granting Watford's cross-motion for summary judgment. In an accompanying comprehensive statement of reasons, the court found Watford had satisfied all its obligations under the Policy regarding the Mucha lawsuit and "any unsatisfied part of the Mucha [j]udgment does not fall within the coverage afforded by the . . . Policy."

The court relied on our decision in Powell v. Alemaz, Inc., 335 N.J. Super. 33 (App. Div. 2000). There, a potential tenant filed a housing discrimination claim against a rental agency. Id. at 36, 40, 41. The rental agency denied the allegations and sought coverage from its business-owners' liability policy. When the rental agency's insurer denied coverage, the rental agency filed a complaint against its insurer for indemnification. Id. at 36. While the rental agency argued the wrongful eviction definition in the policy covered housing discrimination allegations, the insurer argued the allegations were not covered under the policy because the potential tenant never maintained a possessory property interest. Id. at 40-41. Powell held that individuals who do not have a possessory interest in the rental property were not covered by the wrongful eviction provision of the policy. Id. at 42-43.

Here, the trial court interpreted Powell to mean "a private right of occupancy is required" to obtain coverage under the policy's wrongful eviction

provision.  The court found that "it is the same as that of the insurer's language in Powell."  Although Powell involved a housing discrimination case, the court found its reasoning was relevant.  The court explained that "where there is no occupancy or other possessory interest, the 'wrongful eviction' language of the . . . Policy does not afford coverage for the claimed loss."

In its decision, the court stressed that the facts of this case were "more in line with that of [an] assault than wrongful eviction," considering that the arbitrator found that Mucha was grabbed and pulled down the stairs by a "security employee."  The court also emphasized that Mucha did not assert an ownership interest in MDF and did not pay rent to MDF.  Since Mucha had no possessory or ownership interest in the property, the court determined that he was not entitled to coverage under the wrongful eviction provision of the Policy.

The court then addressed whether Watford was entitled to summary judgment and whether all obligations were satisfied under the Policy.  The court noted that Watford provided MDF with $1,000,000 of coverage under the Assault or Battery Related Claims Endorsement, having a $1,000,000 aggregate limit of liability.  The court found the limits of liability had been "entirely eroded," since Watford paid MDF $192,325.51, which was the remaining balance on the Policy.  The court held that the Mucha lawsuit alleged a "single

15

occurrence" pursuant to the Policy, since all Mucha's injuries arose when "he was allegedly assaulted and thrown out of the . . . bar."

Because of the Non-Stacking of Limits Endorsement, the court noted "the total amount provided cannot exceed $1,000,000 as that is the highest applicable per occurrence or per claim limit of insurance available under the Limited Coverage Assault or Battery Related Claims Endorsement."   The court concluded Watford was entitled to summary judgment and had satisfied all of its obligations under the Policy and that Watford had no obligation to pay any portion of the unsatisfied judgment in the Mucha lawsuit.  Memorializing orders were entered.  This appeal ensued.

On appeal, Mucha contends (1) the court erred in applying Powell as the factual predicate is different and the present matter does not involve racial discrimination; (2) Watford's own actions and inactions bar any defense that this is not a case of wrongful eviction; (3) the Commercial General Liability, Coverage B, Personal and Advertising Insurance, paragraph 15, provides coverage for his wrongful eviction; (4) Watford owes him counsel fees and interest on the payment it made to him; and (5) Watford's motion should have been denied because bad faith is always a question of fact.

II.

A.

We begin our analysis by acknowledging the legal principles governing this appeal. As with other contracts, the terms of an insurance policy define the rights and responsibilities of the parties to it. N.J. Citizens United Reciprocal Exch. v. Am. Int'l Ins. Co. of N.J., 389 N.J. Super. 474, 478 (App. Div. 2006). "The interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment." Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996). The court's standard of review regarding conclusions of law is de novo. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

When "interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). The policy must "be enforced as written when its terms are clear" so the "expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (first citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); and then

17

citing Scarfi v. Aetna Cas. & Sur. Co., 233 N.J. Super. 509, 514 (App. Div. 1989)).

If an insurance policy is ambiguous, courts will construe the terms in favor of the insured. Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 18 (App. Div. 2022) (quoting Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 208 (2017)). This doctrine only applies if there is a genuine ambiguity in the contract, and "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Templo Fuente De Vida Corp., 224 N.J. at 189 (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 274 (2001)).

"[A] court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one [they] purchased." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (quoting Progressive, 166 N.J. at 272-73). Thus, if there is no ambiguity in a policy's terms, those terms should be enforced "as written." Zacarias, 168 N.J. at 597.

B.

Possessory Interest/Right of Private Occupancy

Applying those foundational principles, we first address Mucha's contention the court erred because it failed to consider the difference between the racial discrimination cases[6] that it cited, such as <u>Powell</u>, and the matter under review. Mucha contends that <u>Powell</u>, 335 N.J. Super. at 36, involved an insurance policy declining a claim "for damages based on a claim of racial discrimination." Mucha notes the court here correctly held that there must be a "possessory interest" or "an existing right of private occupancy" to qualify for coverage under the Wrongful Eviction provision. However, Mucha avers occupancy and racial discrimination are not an issue here. Rather, Mucha claims this matter is about his "possessory right at the time he was evicted from the bar," triggering coverage under the Wrongful Eviction provision. We disagree.

---

[6] Mucha noted the first three cases mentioned in the court's first footnote, <u>STK Enters., Inc. v. Crusader Ins. Co.</u>, 14 P.3d 638, 639 (Or. Ct. App. 2000), <u>Westfield Ins. Grp. v. J.P.'s Wharf, Ltd.</u>, 859 A.2d 74. 75 (Del. 2004), and <u>Rockgate Mgmt. Co. v. CGU Ins,, Inc.</u>, 32 Kan. App. 2d 743 (Kan. App. 2004), all involved prospective tenants seeking coverage under the wrongful eviction provision of a landlord's insurance policy for damages resulting in racial discrimination. Mucha concedes that these courts properly held that failure to rent cannot give rise to wrongful eviction because there was no occupancy.

The court properly relied on <u>Powell</u> in finding that Mucha should not be afforded coverage under Coverage B for any personal injury arising out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies . . ." because he did not have a possessory interest or right of private occupancy at the bar.[7] In <u>Powell</u>, we determined that a possessory interest is required to trigger a wrongful eviction provision coverage in the context of a housing discrimination allegation. 335 N.J. Super. at 43. We held:

> Principles of law urging liberal interpretation of policy language in favor of coverage do not permit what has been termed the, "perversion of language or the exercise of inventive powers to create ambiguities where they do not fairly exist." An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants. Rather, both interpretations must reflect a reasonable reading of the contractual language.
>
> [<u>Id.</u> at 44. (citations omitted).]

---

[7] <u>See</u> <u>Black's Law Dictionary</u> 1410 (11th ed. 2019) (defining "possessory interest " as "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner."); <u>Black's Law Dictionary</u> 1448 (11th ed. 2019) (defining "private" as "[o]f, relating to, or involving an individual, as opposed to the public or government."); <u>Black's Law Dictionary</u> 1297 (11th ed. 2019) (defining "occupancy" as "[t]he act, state, or condition of holding, possessing, or residing in or on something . . . .").

Here, the Policy's wrongful eviction language is identical to the insurer's language in Powell. The trial court determined that a reasonable insured would interpret the Wrongful Eviction provision in the Policy as inapplicable where the injured party did not have an existing right of private occupancy. The court was correct in its analysis.

Mucha, a business invitee,[8] was forcefully removed from the bar as found by the arbitrator. We agree with the court that the arbitrator's determination that a security officer "grabbed [Mucha] and pulled him toward the stairs and then threw him down the stairs" resulting in personal injury describes "events more in line with that of assault then wrongful eviction." The court's decision is based upon substantial credible evidence in the record. The record is devoid of any evidence indicating Mucha had a possessory interest or private right of occupancy of the premises.

The undisputed facts show MDF operated the bar and was a tenant paying monthly rent to its landlord, Newark and River, LLC. MDF did not have any tenants. Mucha did not pay rent to MDF nor to Newark and River, LLC. Thus,

---

[8] A business invitee is someone who has been invited onto the land in a commercial or business context. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993).

A-3505-21

Mucha had no possessory interest or a right of private occupancy in the bar. Since Mucha did not have a possessory interest or a right of private occupancy in the bar, Coverage B—Wrongful Eviction—was not triggered, and the court properly found Watford was entitled to summary judgment because all of its obligations under the Policy had been satisfied regarding the Mucha lawsuit. The fact that Powell dealt with a housing discrimination issue is irrelevant to the coverage analysis here because a possessory interest is the determinative factor.

Mucha contends even if the court properly applied Powell, there are "inherent ambiguities in the coverages and exclusions [that] compel coverage." In particular, Mucha argues there is coverage for his injuries under Coverage B, and wrongful eviction is not mentioned in the Assault and Battery Exclusion. In other words, Mucha claims no exclusions apply to these circumstances to deny him coverage.

In interpreting wrongful eviction in the context of Coverage B, the court relied on two out-of-state cases. In STK Enters., the Court of Appeals of Oregon held that an insured bar and restaurant's personal injury coverage for wrongful eviction did not cover the establishment's alleged refusal to admit prospective black patrons because they had no possessory interest in the premises. Id. The court here also noted the Court of Appeals of Kansas' interpretation of "wrongful

eviction" in <u>Rockgate Mgmt. Co. v. CGU Ins., Ins./PG Ins. Co. of N.Y.</u>, 32 Kan. App. 2d 743, 751 (Kan. Ct. App. 2004), holding that a hotel's alleged refusal to rent rooms to youth group members was not a wrongful eviction because wrongful eviction requires "at least temporary possession of the subject property."

The explicit terms of Coverage B are unambiguous and do not support Mucha's interpretation. The plain text requires a claimant—such as Mucha—to have a possessory interest or right of private occupancy. As stated, Mucha never had a possessory or occupancy interest in the bar. Therefore, we conclude the court properly granted summary judgment to Watford because there are no inherent ambiguities in the Policy or its exclusions, and Mucha was precluded from coverage under Coverage B. The total amount of coverage available under the Assault and Battery Related Claims endorsement cannot exceed $1,000,000 and was subject to declining limits. Watford had to pay five claims during the Policy period including Mucha's lawsuit. Watford duly paid Mucha $192,325.21, the remaining balance of the aggregate limit. Watford has no obligation to pay any portion of the unsatisfied judgment in connection with the Mucha lawsuit.

C.

Estoppel by Judgment and Invited Error

Next, Mucha contends Watford is estopped from contesting the wrongful eviction action. He claims Watford continually misconstrued the case only as an assault and battery cause of action. After Watford advised Mucha it was disclaiming coverage under its interpretation of the Assault and Battery Coverage provision, he amended his complaint to assert a wrongful eviction claim because the Policy states there is coverage for a wrongful eviction claim "without any exclusion." Mucha notes MDF did not object to his motion to amend his complaint. Therefore, Watford is estopped from contesting the new "wrongful eviction" cause of action, under the doctrines of invited error and estoppel by judgment.

Mucha asserts MDF did not file a trial de novo request under Rule 4:21A-4(c) to reject the arbitrator's award, and therefore Watford is bound by the arbitrator's finding that Mucha's injuries stemmed from "wrongful eviction and/or assault and battery." Mucha additionally contends MDF did not oppose his motion to convert the arbitration award to a final judgment, and estoppel by judgment applies to Watford. We reject Mucha's arguments.

24                                                A-3505-21

In criminal cases, the invited error doctrine exemplifies "the common-sense notion that a 'disappointed litigant' cannot argue on appeal that a prior ruling was erroneous 'when that party urged the lower court to adopt the proposition now alleged to be error.'" State v. Pinson, 461 N.J. Super. 536, 555 n.11 (App. Div. 2019) (quoting State v. Munafo, 222 N.J. 480, 487 (2015)); see also Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996). The doctrine will not be applied if a particular error "cut mortally into the substantive rights of the [parties]," State v. Corsaro, 107 N.J. 339, 345 (1987) (quoting State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974)), or if it will cause a "fundamental miscarriage of justice," Brett, 144 N.J. at 508.

By contrast, it should apply to bar relief from a trial error where a [party] has persuaded the trial court to allow him or her to "pursu[e] a tactical advantage that does not work as planned." State v. Williams, 219 N.J. 89, 100 (2014). In sum, a "[litigant] cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take [a] chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought . . . claiming it to be error and prejudicial." State v. Jenkins, 178 N.J. 347, 358 (2004).

The invited error doctrine and its "civil-law counterpart," estoppel by judgment, "prevent[] litigants from 'playing fast and loose' with, or otherwise manipulating, the judicial process." Id. at 359. Applying this standard, we conclude Mucha's argument is not applicable to the circumstances.

Watford has consistently maintained that Mucha's claim arose out of an alleged assault perpetrated by MDF's employees. Watford was not a party in the underlying lawsuit and could not file a trial de novo from the arbitrator's award. Moreover, Watford has always asserted it was only responsible for the remaining portion of the $1,000,000 policy limit in it defense of MDF.

A party can only raise a judgment as an estoppel against a party as to questions, issues, or facts that were actually litigated and determined in the prior action. See Pub. Serv. Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419, 425 (App. Div. 1995) (finding "[i]t is a fundamental rule that facts and questions in issue in an action and there admitted or judicially determined are conclusively settled by a judgment entered therein, and such facts or questions become [r]es judicata in all subsequent litigation between the same parties and their privies.").

The arbitration award did not bar Watford's amended declaratory judgment action. There was no judicial adjudication that Mucha's injuries stemmed from a wrongful eviction. That was a legal determination necessary

for a court's interpretation of the Policy. The allegations in the amended complaint in the Mucha lawsuit—whether phrased as negligent assault or wrongful eviction—all arise out of the assault of Mucha by MDF employees. Our Court's decision in <u>American Motorists Insurance Company v. L-C-A Sales Company</u>, 155 N.J. 29, 35 (1998) explain the phrase, "arising out of":

> The critical phrase "arising out of," which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. "The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided."
>
> [(citations omitted).]

Since the Assault and Battery Exclusion precludes coverage for any "bodily injury" claim "directly or indirectly" "arising out of" an "assault" or "battery," the exclusion applies, barring coverage. As such, the court did not err in awarding Watford summary judgment.

In light of our decision, we need not address Mucha's arguments relative to counsel fees and bad faith. We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27                                                                          A-3505-21